JOHN W. TREADWELL & another, Executors, *vs.* THOMAS F. CORDIS & others.

This court have jurisdiction in equity of a bill by executors, to obtain the direction of the court in the execution of trusts arising under a will, when the same property is claimed under the will by different parties.

A testator gave to two of his four sons $20,000 each, advanced to them and charged on the testator's books; to a third son a like sum, including as part thereof any sums advanced and so charged; and to the fourth son certain real estate occupied by him, and the sum of $8,500, including as part thereof sums so advanced and charged to him; and directed that no advances made to his sons should bear interest, except on what should exceed the sum of $20,000; and gave the residue of his estate, not otherwise disposed of, real and

Treadwell & another *v.* Cordis & others.

personal, " after payment" of debts and charges, to his executors, in trust to pay the rents and income, as fast as received, during the lives of his sons and the survivor of them, to said sons, in equal proportions, and their heirs, and upon the decease of all the sons to transfer the principal to their heirs, in the proportions above named, by right of representation; and further directed that all sums charged against either of his sons in his books, not including the sums before given to them, except as before mentioned, should be deducted from what he would be entitled to receive by virtue of the will, and he be entitled to receive the balance only of the devises and bequests before made.

*Held,* That the residue was to consist of the whole of the real and personal property, deducting the amount necessary for the payment of debts and specific legacies payable at once, and reserving enough to pay, as they should fall due, legacies payable at future times, and deducting also the specific bequest to each son, and the devise of real estate to one of the sons; computing however, as part of each bequest, the sums advanced to each son, except the purchase money of said estate; although the testator by a codicil, expressed to be for the purpose of explaining the clause of bequest to that son, declared his intention to be to give him the value of $20,000, and that he had charged him in his book for said real estate with the sum of $11,753.82, which constituted a part of said sum of $20,000, and, to make up said sum of $20,000, had bequeathed him, in said clause, the sum of $8,500, from which last sum there was to be no deduction whatever:

That the earliest advances to each son, in point of time, to the amount of $20,000, were to bear no interest, and the advances beyond that sum to bear interest from their respective dates to the decease of the testator:

That the annuities given by the will must be paid out of the income of the fund, and, if all the sons should die before all the annuities should fall in, either part of the capital must be appropriated to the purchase of annuities for the surviving annuitants, or a sufficient amount of the capital reserved to yield an income amply sufficient to pay the annuities:

That the residue included all debts due to the testator at the time of his death, and all advances to each son beyond the amount of $20,000, whether charged in the testator's books, or acknowledged in writing by such son:

That the residue must be considered as formed at the time of the testator's death, subject to the subsequent payment of debts and charges; and that the income from that time was to be paid to the sons and their heirs:

And that the advances to each son must be deducted from his share of the residue, and not from the income.

A testator appointed three persons by name, the survivors and survivor of them, his executors, and gave the residue of his property to them upon trust to pay the income to his sons for life, and, after their decease, to pay the principal to their heirs. *Held,* that, one executor having declined the office, the other two might execute all the trusts of the will.

BILL IN EQUITY by John W. Treadwell and John J. Clarke, executors of the will of Thomas Cordis, formerly of Boston, but since of Longmeadow in the county of Hampden, (alleging that Thomas F. Cordis, the third executor appointed by the will, had declined to accept the trust, or to qualify himself for the execution thereof,) to obtain the advice and directions of the court concerning the disposition of a large amount of real and

personal property, and of rents and profits, dividends and income, held by them under the will, which contained the following provisions :

" *Imprimis.* It is my will that all my just debts, and the charges of my funeral, be paid and discharged by my executors hereinafter named and appointed, out of my personal estate, as soon as conveniently may be after my decease, and I leave the charges of my funeral to the direction of my executors.

" *Secondly.* I give and dispose of all my estate, real, personal and mixed, (save what shall be necessary for the payment of my just debts and funeral charges,) in the manner following :

" I give and bequeath to my son Thomas Frederick the sum of twenty thousand dollars, heretofore advanced to him, as charged in my books under date of January 1st 1835, by discharging him from all indebtedness to my estate for that sum so charged.

" I give and bequeath to my son Francis Temple the sum of twenty thousand dollars, heretofore advanced to him, as charged to him in my books under date of January 1st 1839, by discharging him from all indebtedness to my estate for that sum so charged.

" I give and devise to my son Edward the parcels of real estate, situated in said Longmeadow, purchased of Roderick Burt, and also of Jacob Colton, by me, and the same parcels of real estate occupied and improved by said Edward Cordis.

" I also give and bequeath to my said son Edward the sum of eight thousand and five hundred dollars ; as a part of which sum, however, are to be taken the sums advanced, and that shall hereafter be advanced by me to my said son Edward, and that are and shall be charged in my books against him ; and the balance of said sum, if any there be, it is my will shall be paid to my said son Edward, as soon as conveniently and safely it may be done after my decease, to have and to hold the said real estate and moneys to my said son Edward, his heirs, executors, administrators and assigns, to his and their sole use and behoof forever.

" I give and bequeath to my son Clarence Russell the sum of twenty thousand dollars ; the sums advanced, and that shall hereafter be advanced to him by me, as shall appear charged to him in my books, to form a part of said sum ; and the balance, if any, I desire and direct shall be paid to my said son Clarence Russell, by my executors hereinafter named, in such sums, and at such times, as my said executors shall judge judicious, and for his interest."

[Then followed specific legacies and annuities to other persons, some of which legacies were payable when the legatees should arrive at the age of twenty one years.]

" And the rest, residue and remainder of my estate, real, personal and mixed, not hereinbefore otherwise disposed of, after payment of my just debts, funeral charges, and charges of settling my estate, as well as the charges of my executors hereinafter named and appointed, I hereby give, devise and bequeath to my executors hereinafter named, and to the survivors and survivor of them, and the heirs and assigns of such survivor, to, upon and for the uses, intents and purposes, and with and subject to the powers, provisos, conditions and limitations hereinafter mentioned and expressed, of or concerning the same, that is to say : To the use of my said executors and the survivors and survivor of them, and the heirs, executors and administrators of such survivor, for and during the lives of my said four sons, Thomas Frederick, Francis Temple, Edward and Clarence Russell, and the life of the longest liver of my said four sons, upon the especial trusts, however, that my said executors, and the survivors and survivor of them, and the executors and administrators of such survivor shall and do, during the lives of my said four sons, and the life of the longest liver of them, take and receive the rents and profits accruing, and that shall from time to time accrue, from the real estate, and therewith make all necessary repairs and improvements, and pay all taxes, insurance, and other necessary charges and expenses in and about the same, and, after all such payments deducted, shall, as soon as received, and as often, pay over the residue of such rents and profits to my said four sons, during their joint and several lives,

in equal proportions, to and for their respective sole and separate use and benefit forever; and, after the decease of one or more of my said sons, so long as either of them shall live, then shall pay over the proportion that such deceased son or sons would have been entitled to receive, of such rents and profits, had he or they been living, to the legal heirs of such deceased son or sons."

[And upon the further trust, to invest all said rest and residue of the personal property in certain specified stocks.]

" And upon the further trust to pay over all the dividend and income of said stocks, over and above the costs and charges of my said executors and trustees in, or about, or relating to the said trusts, or any of them, as fast as they shall be received, in equal proportions to each of my said four sons, during their lives, and the life of the survivors and survivor of them, and, after the decease of one or more of my said four sons, to pay over the proportion thereof to which said deceased son or sons would have been entitled, if living, to the then legal heirs of such deceased son or sons, to and for their respective sole and separate use and behoof forever; and, upon the decease of all my said sons, upon the further trust, and to the use of the legal heirs of my said four sons respectively, in equal proportions, by right of representation, and their respective heirs, executors, administrators and assigns forever, to their sole use and behoof forever.

" And I hereby direct, and the devises and bequests to my executors as above are upon the especial trusts, that they, and the survivors and the survivor of them, and the heirs, executors and administrators of such survivor, after the death of all my said four sons, do and shall convey, assign, transfer and set over said real estate and stocks to said heirs of my said four sons respectively, in the proportions above named, by right of representation, to have and to hold the same to them respectively, and to their respective heirs, executors, administrators and assigns, to their sole use and behoof forever.

" *Thirdly.* And it is my will, and I do hereby direct, that all sums charged against either of my children in my books shall

be first deducted from what they respectively would be entitled to receive by virtue of this my will, and the balance only shall such child be entitled to receive of the devises and bequests hereinbefore made. But this is not intended to embrace the sums hereinbefore given to my sons, as advanced to them and charged in my books as hereinbefore mentioned, except as is hereinbefore mentioned.

" *Fourthly.* And it is further my will, and I hereby direct that the advances made by me to either of my said four sons shall not draw interest, and no interest shall be charged thereon against them or either of them, except on what shall exceed or be over the sum of twenty thousand dollars."

" *Lastly.* I hereby nominate, constitute and appoint John W. Treadwell of Salem ; my son Thomas Frederick, if he be living at the time of my decease ; if not, my son Francis Temple, in his place ; and John J. Clarke of Roxbury in the county of Norfolk and Commonwealth of Massachusetts, counsellor at law, if he shall be living at the time of my decease ; if not, Manlius S. Clarke of Boston in the county of Suffolk, counsellor at law, in his place, executors of this my last will and testament, and so that in case of the death of one of them, the survivors and survivor of them shall then be sole executors or executor, of this my said will. And I give the survivors and survivor of them, my said executors, all the power and discretion I have given my said executors. I also give to them and each of them all the power, and repose in each of them all and every trust I have given to them jointly, provided and so far as he, who shall act, have the consent of the other executors or executor."

Appended to the will was a codicil containing the following : " As some ambiguity exists in the language of the clause in the foregoing will, of my bequest to my son Edward, I add this codicil to make my meaning clearly understood. My intention is to give him the value of twenty thousand dollars. I have charged him in my account book, for the real estate occupied by him, with the sum of eleven thousand seven hundred and fifty three dollars and eighty two cents, which constitutes a part of said sum of twenty thousand dollars, and I have bequeathed to him

in said clause the sum of eight thousand five hundred dollars, to make up said sum of twenty thousand dollars, from which sum of eight thousand five hundred dollars there is to be no deduction whatever."

The bill averred that the only heirs at law of the testator were his four sons; and that Thomas, Francis and Edward were charged in the books of the testator with large sums of money, as advanced to them, beyond the sums specifically given to them in the will; that they contended that said sums so charged were not to be paid out of the income, but were to be deducted from their respective portions of the principal; and also claimed, after said deduction from the principal, all the rent and income of their respective shares, received by the plaintiffs since the death of the testator, or hereafter to be received; that among the papers of the testator were various promissory notes, drafts or evidences of debt, signed by each of the four sons, all or many of which were alleged by them to have been given for or on account of sums also charged to them in the testator's books; and that the mode in which said charges were entered in said books was confused, and a subject of controversy with each of the sons; and that Thomas and Edward had no issue, and Francis had one minor son, and Clarence two minor daughters.

All said sons and grandchildren were made parties to the bill, and answers were duly filed in behalf of all of them, substantially admitting the facts stated in the bill. And the sons averred that they, from their youth to the time of the testator's decease, as well as their wives and families, had been supported by him, and were principally dependent upon him; and he knew that they, by reason of their education and habits of dependence upon him, would have little other resource for the annual support of themselves and their families; and that repayment of the advances out of the income would leave them for several years without such means of support, and might destroy the equality of distribution among them contemplated by the will. The case was set down for hearing on bill and answers.

*J. J. Clarke*, for the plaintiffs.

*S. Bartlett*, for the sons.

*L. Shaw, Jr.* for the grandchildren.

SHAW, C. J.   The object of the bill, on the part of the plain-tiffs as executors, is to obtain the advice and direction of this court as a court of equity, in the execution of several trusts annexed to their office of executors by force of said will, the proper execution of said trusts depending, as they allege, upon the just construction of several clauses and provisions contained in said will, upon which important questions arise, and that, without such direction and advice, they cannot safely proceed in the execution of said trusts, and in the settlement of the said estate.   We have no doubt that the equity jurisdiction of this court, given by statute in all cases of trust arising in the settle-ment of estates, is broad enough to extend to cases where the trustees are actors, and seek the aid and direction of a court of equity, where there is doubt and difficulty, and where there are conflicting claims on the part of different parties to the same property or rights, under the instrument by which such trust is created.   It has been so held in the analogous case of a trust created by deed *inter partes*, vesting property in trustees for the payment of debts.   *Dimmock* v. *Bixby*, 20 Pick. 368.   And the same doctrine was applied to trusts under a will, in the recent case of *Hooper* v. *Hooper*, 9 Cush. 127.

The testator, by his will, after directing all debts and charges on his estate to be paid, and after giving several specific lega-cies and annuities, some of which legacies are made payable when the legatees shall arrive at the age of twenty one years, gives the rest and residue of all his real and personal estate to his executors in fee, and upon the trusts therein specified; and the first and principal question upon the construction of this will is, how is this residue to be formed and ascertained, of what it shall consist, and in reference to what time it shall be consid-ered to be made.

1. As to the first branch of this question, it appears to us that this "residue" is to consist of the whole of the real and per-sonal property which the testator leaves, subject to certain deduc-tions, to be made by operation of law, or by direction of the

testator. The executors are to administer the estate according to law, and, for that purpose, the first charge upon the property in their hands is for the payment of debts and charges on the estate; and to this they are liable whether the testator so directs or not. But in the present case he does direct that all debts and charges shall be deducted. There is also to be deducted that part of his estate " otherwise disposed of " by the same will. This includes, first, the specific devise to Edward, and the specific pecuniary legacies, and, among these, for each of the sons, who shall, upon an account taken, appear not to have received the amount of $20,000 by way of advance, enough of the estate. to make up the sum of $20,000. This is to be taken with this exception, in regard to his son Edward, as explained in the codicil; that, whereas he had purchased for his son Edward, but in his own name, an estate in Longmeadow at a cost of a few hundred dollars over $11,500, he obviously gives him this estate as equivalent to an advance of $11,500, and discharges him from the amount of this charge in his books as the cost of that estate, to wit, $11,753.82. He then gives his son Edward a pecuniary legacy of $8,500; from which sum of $8,500, he adds, in the codicil, there is to be no deduction whatever. Some question arises in regard to this latter clause. Does it mean that, if there are charges in his books against Edward, other than the moneys advanced to Burt and Colton, for the purchase of the estate in Longmeadow devised to Edward, such advances are not to be deducted from his $8,500; or, if they exceed that sum, that they are not to be charged to him ? The words, if they stood alone, would be broad enough to bear that construction; but it would be directly repugnant to the provision in the body of the will, that all advances to Edward shall be deducted from his legacy of $8,500. The testator might undoubtedly alter his mind, and revoke a provision by his codicil, which he had made in his will; but the question is, has he done so by such express words or necessary implication, as to manifest a plain change of purpose ? In construing any part of a will, every provision and clause in the principal will and codicil is to be taken into consideration as

one entire disposition, in order to construe such particular clause. If it were held that Edward was to have his devise of land and his legacy of $8,500, without any deduction for advances, it would appear to be an entire departure from the main purpose and fundamental scheme of the will. That purpose seems to have been to make his four sons ultimately the recipients of his bounty, and of the estate intended for them, in substantially equal proportions, taking into consideration, as part of such bounty, the sums which they had gratuitously received of him at the time of making his will, or might receive of him during the further continuance of his life, which might of course be uncertain sums, dependent on future events and contingencies. To secure this equalization of advances, which the sons had received, or should have received of him at the time of his decease, as gratuities and advances, he seems to have fixed the sum of $20,000 as a standard of computation, directing that those who had received more than that sum should be accountable for such excess, with interest to the time of his decease ; and those who had received less than that sum should be entitled forthwith to a sum of money sufficient to make up such advances to the sum of $20,000. We see no intent to alter this fundamental scheme by his codicil in favor of Edward. But when he thereby gives him $8,500 without any deduction whatever, we think the generality of the words is to be limited by the previous words of the codicil, which was made solely to explain his gift to Edward. The codicil recites that he had in fact paid Burt and Colton $11,753.82 for the estate devised to Edward, and now gives him $8,500 ; this would manifestly make more than $20,000 by $253.82. We think the testator intended to say that Edward should have his $8,500 without any deduction of the charges made to him in the testator's book, although such charges, with that legacy, would exceed $20,000. But if there should be charges to Edward, beyond those made for the purchase of these estates, we are of opinion that Edward would be liable for them ; that, if less than $8,500, they must be deducted from his legacy, and if they exceeded that he would stand debtor to the estate for the excess, with interest.

In computing interest on the sums due from the sons for advances over $20,000, we think that the earliest advances in time are to be set against the legacy of $20,000, and no interest is to be computed anterior to the time when the advances of either son reached $20,000; and all advances made after the aggregate of advances reached $20,000, are to bear interest from the times respectively at which they were made, to the decease of the testator.

The next deduction to be made, in forming the residue, is the amount necessary for the payment of the legacies payable to legatees, when they come of age. As these are not legacies to children, they will not draw interest; and it will be the duty of the executors to see that a sufficient amount of the capital is reserved to pay these legacies when they become due. In the mean time, the income from the part of the fund so reserved will be disposed of from time to time, like that of the residue of the same fund. But should the four sons all die before these legacies all become due, so that the general fund becomes distributable, enough of the capital of this fund must be retained to pay such legacies.

In regard to the annuities, the court are of opinion that provision for the four sons being made, subject to these annuities, the annuities must be paid from time to time out of the accruing income of the fund, and the residue of the income be from time to time distributed to the sons and their respective heirs, until the fund itself shall become distributable on the decease of the last survivor of the sons. But should the last survivor of the sons die before all of the annuities have fallen in, it will be the duty of the executors, before distributing the capital, either to appropriate a sufficient amount of the capital to purchase annuities for the surviving annuitants; or to reserve a sufficient amount of the capital to yield an income amply sufficient to meet such annuities, leaving such portion of the capital, and enough for the unpaid legacies, if any, to be the subject of another and future distribution, according to the terms of the will, when all the annuities have ceased and the legacies been paid

2. Having thus considered what deductions are to be made from the testator's property, in order to form and establish the " residue " of the estate, it may be proper to consider briefly what these deductions are to be made from, or, in other words, what is to be regarded as the entire property from which the deductions are to be made. He describes it as all his property, real, personal and mixed. This necessarily includes all debts due to the testator at the time of his.decease, including interest on demands drawing interest, up to that time; but, what is more important to the present subject, it includes all debts due from each of his sons over the sum of $20,000, with interest computed as hereinbefore stated. For although these sums advanced to the sons respectively, however they are to be charged and raised out of the estate, which is a matter of after consideration, are not, strictly speaking, debts to be enforced by action, they are still regarded by the testator as assets, to form part of the proportions to be distributed. These surplus amounts therefore over $20,000, advanced to each son, if any, are to be taken into the aggregate as part of the testator's property, for the purpose of appropriation and distribution, according to the *other* parts of the will.

And in computing the amount of these advances to the sons, or either of them, although the testator mentions only sums charged in his books, yet that is one mode only of proving such advances; and therefore, if there were held by the testator, at the time of his decease, any promissory notes, due bills, receipts or other vouchers for money, they are to be taken, as well as sums charged to them respectively in his books, as advances, within the meaning of his will.

3. The next material question is, at what time this residue must be deemed to be formed and established; and though this has been already alluded to, it may be proper to add something further. We are of opinion that this residue must be considered as formed at the time of the decease of the testator. He gives this residue, both of the real and personal estate, to the executors; the real estate in fee, the personal not subject to any condition precedent; so that the whole property vests in them bv

relation from the time of the decease of the testator, subject of course to charges upon it created by law, and others imposea by the will. The real estate is upon trust, to pay the net amount of the rents and profits " as soon as received ; " the personal, upon trust, to pay all the dividends and income subject to charges " as fast as they shall be received." Now, as owners of the real and personal estate by the bequests, they are entitled to receive, and must actually receive rents, dividends and income ; and they become accountable for such income to those entitled to it, from the decease of the testator.

It is no objection to this view, we think, that the testator uses the term, " the residue of my estate, after the payment of my just debts." The term " after " does not always designate the time at which one thing is to be done in reference to something else ; but it expresses the relative priority and subordination of one claim to another in matter of right. So we think it does here ; the residue is to be formed subject to the payment of debts and charges, although they may be actually paid afterwards. And so of all other receipts and payments to be taken into consideration, as ascertaining the " residue; " they cannot be made at the time of the decease ; some time must be required to prove the will, and do many other things ; but they may be charged and credited as of that time, and so, by an easy computation, show the residue ascertained as of that time, for the purpose of adjusting the relative rights of those entitled to the income, and those entitled to a distribution of the capital.

Nor does this view indicate the time at which an executor may be required to make actual payment of debts or legacies, or to commence paying over income. It may be that an estate may turn out to be so situated that the whole may be required to pay debts, and then it will appear that there is no residue, either to yield income or pay legacies, and therefore there will be nothing for the will to operate upon in favor of beneficiaries, whose claims are subordinate to those of creditors. For most of the points applicable to this part of the subject we would refer to a recent case in which they were much discussed. *Minot v. Amory,* 2 Cush. 377.

30 *

4. But the most important, and by far the most difficult ques-- tion arising out of this will is, whether the surplus advances made by the testator to either of his sons, over the sum of $20,000, and with which the will manifestly intends to make them in some form chargeable, shall be taken out of the income which, under the trusts of the will, is to be paid to them respectively ; or whether they shall, in the first instance, be a charge upon the equal quarter part of the residue, set apart in the hands of the executors and trustees, first to pay the net income to such son during his life, and at his decease to his heirs, until the decease of all the sons, then the principal of such share to the heirs of such son.

The question arises upon the clause, marked " thirdly " amongst the trusts on which the property is given to the exec· utors, *ante,* 345, 346.

The argument is, and it is certainly entitled to great consid· eration, that all which each son would be entitled to receive, by virtue of the will, was a pecuniary legacy, payable presently, of $20,000, and his share of the accruing income to be collected by the trustees and received through them ; so that, in regard to either son who had had advances over $20,000, the surplus should be reimbursed, principal and interest, out of such payments of income only, until the whole of such surplus advances should be reimbursed to the estate. Upon this construction, it is obvious, that a son who received advances to a considerable amount beyond $20,000, should the interest and principal be charged upon his share of the income, might remain several years, and, looking at the uncertainty of the duration of life, even his whole life, without receiving a dollar from his father's estate. It is suggested in the argument, that possibly the testator might choose to have the shares accumulate, by these appli· cations of the income coming to the sons, for the benefit of his grandchildren ; and that, if he chose, he had a right to give his estate that direction. But this would not necessarily enure to the benefit of grandchildren ; the shares, upon the decease of all the sons, are to go to their general heirs ; these may be their lineal descendants or collateral heirs.

A question is made, whether, in order to put a construction upon this will, we may properly take into consideration the fact set forth in the answers, that the sons had been mainly dependent upon their father for support, and that their education and habits were such as to lead them still to depend on means derived from him, after his decease. We have not thought it necessary to consider this question very particularly, because it appears to us that the facts which do appear on the will itself, taken in connection with the inventory, would lead to nearly the same conclusion which we are invited to draw from the facts so set forth. It appears, from the unquestioned facts, that Mr. Cordis was somewhat advanced in life; left no widow to be provided for; had four children only, all sons, at a mature age, with education completed, some of them married, two of them having offspring of tender years, and apparently a large estate to be disposed of. These sons appear by the will to be, as reasoning *a priori* we should suppose they would be, the prominent objects of his bounty. We should therefore be slow to adopt a construction of his will, unless necessary, depriving them of all personal benefit from the will for a considerable time, perhaps forever. It is true that, under the general and unqualified power of disposing, the testator had a right to make such a will, although it may seem unreasonable ; and if he has done so in clear and unequivocal terms, the law will carry it into effect ; it is not for the court to make, but only to expound a will. But where one construction would seem to be unreasonable, and probably not consistent with the actual intent of the testator, we are led to look at the general scope and intent of the whole will, and of every provision and clause of it, and ascertain the intent of the testator in the particular provision by the clearest and steadiest lights which the case affords.

By the first paragraph of the residuary clause, the executors and trustees are required to pay to each of the four sons, by name, a share of the income, as soon as received by them. This we have herein held to be from the time of his decease Such payment to each son personally and promptly, that is, payment to be in fact made as soon as the condition of the

estate will admit of it, and, when made, to be computed from a time commencing with the testator's decease, is conformable to the general purpose of the will, which is to benefit each son personally and immediately. Is this purpose changed and reversed, in respect to any one son, by the subsequent clause in the will, marked " thirdly " ? It stands thus : And it is my will and I do hereby direct that all sums charged against either of my said children shall be first deducted from what they would respectively be entitled to receive by virtue of this my will, and the balance only shall such child be entitled to receive of the devises and bequests hereinbefore made.

The former part of this clause certainly favors the construction insisted on by the guardian of the grandchildren; because, after the $20,000, the income only is to be personally received by the son ; and the direction to deduct from the sum to be received by him favors the construction, that it is to be deducted from the income. But the second branch of the sentence throws light upon the first; it adds: " And the balance only shall such child be entitled to receive of the devises and bequests hereinbefore made." This indicates the source or fund out of which the surplus advances are to be made, namely, " the devises and bequests " made by the will. This is a very apt description to designate the property devised and bequeathed ; but it would be a very inaccurate way of describing rents and profits, to accrue in future from the estate devised, and to be paid from time to time as it may accrue. A balance, *ex vi termini*, must be of the same character with the aggregate from which something has been deducted. The balance to be formed in the present case is of the " devises and bequests," and necessarily leads to the conclusion, that these surplus advances are to be deducted from the property bequeathed. But it is said that no part of the estate devised and bequeathed is to be received by the child personally ; this is true, and this it is that causes the ambiguity. If it is to be deducted out of the devises and bequests, meaning the property devised and bequeathed and remaining in the hands of the executors, then it cannot remain to be deducted out of the income to accrue in future. If it can

only, according to the first clause, be deducted out of what the child is to receive, and that is the future income only, then it cannot be deducted out of the bequeathed property. This is a patent ambiguity, arising from two conflicting provisions in the will, both equally efficacious; and if one only can be adopted, and the other must yield, that construction must be adopted which will best promote and carry into effect the intent of the testator.

There is another expression in this paragraph, which requires consideration, namely, the balance only shall such child " be entitled to receive " of the devises and bequests, &c. Now supposing these words describe property bequeathed, which they naturally do, and without a forced construction we think they must, then, in looking into other parts of the will, we find that such child is to receive no part of the bequeathed property personally. This shows therefore that this phrase, the property " which such child would be entitled to receive," as used in the first clause, was not used with strict accuracy, but in a loose or careless sense, and, taken in connection with the whole will, designates the share or proportion of the whole property appropriated and set apart to the ultimate use and benefit of such child, and his descendants or other heirs.

We are therefore of opinion that the surplus of each son's advances is to be deducted from his one fourth part of the residue as formed, and not from his share of the income to accrue and be paid over afterwards by the executors.

The effect of this construction, we think, will be to render the four sons participants, in equal shares, in their father's bounty, including in this term, as we think the testator intended, as well what he should have advanced and given them respectively during his life, as that intended to be given for their benefit, and that of their respective heirs, by his will.

It is said that this will be irreconcilable with other clauses of the will, namely, that the income be paid to the four sons " in equal proportions." This, we think, does not mean in equal aliquot parts or quarters, but in proportions equalized or made equal, by charging advances, previously made, to those who had

received them, deducting them from their shares, and replacing the amounts thus obtained as a part of the estate to be divided.

So in the clause directing the executors and trustees, after the death of the four sons, to convey all the property to their respective heirs in "the proportions above named," by right of representation. By the terms, "proportions above named," we understand a proportion equalized and determined, by charging to each, for the general benefit, the surplus of his advances over $20,000.

On this construction, the four sons and their respective heirs do substantially share equally in their father's estate, including, in "estate" to be thus shared, as well that which was given them in his lifetime, as that given them by his will.

5. The only remaining question is, whether the two executors, who bring this suit, can exercise all the powers and trusts, and are responsible for the performance of all the duties belonging to the three, appointed executors by the will, the third having not only failed to give bond, but having expressly renounced the office of executor.

This is sometimes a question of some difficulty, and has been thought to depend on distinctions rather refined and shadowy. But in the present case the court are of opinion that all the rights and powers, including trusts, which devolved on the three by the will, have now devolved on the two, who have proved the will, given bond and taken letters testamentary.

We consider it to be settled, by a series of decisions in Massachusetts, that a testator may give special directions in his will, in regard to investing and holding property, and executing trusts respecting it, and that such directions are binding upon executors, and constitute a part of their official duty; so that, having given bond with sureties to administer the estate according to the will, a failure to perform them is a breach of official duty, for which the sureties are liable. Such directions constitute duties incumbent on an executor, superadded to the ordinary duties of the office of executor. But where the same persons are executors and trustees, the executors can only discharge

themselves from their duties as executors by opening a separate account and charging themselves as trustees, and by giving bond where bonds of trustees are required. *Hall* v. *Cushing*, 9 Pick. 395.

Such seems to have been the case in *Minot* v. *Amory*, 2 Cush. 377, where three persons named were appointed executors, and, by a distinct clause in the will, the same three persons were appointed to hold the residue in trust after the estate was settled. They could only discharge themselves as executors by charging themselves as trustees. The distinction seems to be between cases where the testator gives special directions to his executor as executor, or confers on him, as such, particular powers and trusts; and cases where the testator, having appointed one or more persons as executors, creates the same persons trustees, or gives the residue to them upon trusts specified. In the latter case, the law presumes that he reposes special trust and confidence in the persons of the executors, by name or otherwise, and does not rely upon their official duty as executors. In the former, it is an enlargement of the office of executor, and the renunciation of that office is a renunciation of the powers and trusts annexed.

The question, whether a trust power given to an executor who declined the trust, went to and could be executed by an administrator with the will annexed, was much considered in several cases recently decided arising on one and the same will. *Tainter* v. *Clark*, 13 Met. 220. *Clark* v. *Tainter*, 7 Cush. 567. *Dunbar* v. *Tainter*, 7 Cush. 574. In those cases it was held, that the trust power did not pass to the administrator with the will annexed, and of course remained in the executor and trustee originally appointed. But those cases differed from the present in several particulars. There, by the terms of the will, a special confidence was reposed in the trustee; he was empowered to sell, if in his judgment it should be expedient; and the exercise of such power was not necessary to the execution of the will, or to the complete settlement of the estate in conformity with it. The executor and trustee was one person only; whereas in the present case, the executorship and trusts

annexed are vested in three jointly, and the testator, in terms, gives to them the property as executors, and to the survivors and survivor of them, all the powers given to the three jointly, provided that he who acts shall have the consent of the other executors or executor. And further, the execution of the trusts created by this will is necessary to the settlement of the estate; they could perform their duties as executors in no other way. It seems quite clear therefore, that the third executor, not having qualified as executor, but, on the contrary, having renounced that office, can in no event, without being executor, exercise the powers and trusts vested in these executors. Should the two acting executors die before the estate is settled and the trust closed, it may be a serious question whether it will not be necessary to call in the aid of the judge of probate, or of a court of equity, to appoint trustees; but that is a question which need not now be decided. We think the two are now competent to execute the powers and perform the trusts of this will.

*Decretal order accordingly.*