Florence M. Swasey et al.
*vs.*
Clark D. Chapman, Co-Executor et al.

Cumberland.　Opinion, November 13, 1959.

*John E. Willey,*
*J. Fulton Redman,*
*Ernest L. Goodspeed,*
*Nathan W. Thompson,* for plaintiff.

*Robert P. Smith,*
*Perkins, Weeks & Hutchins,*
 for Imperial Council, etc.
 and for Good Will Home Assn.

*Hutchinson, Pierce, Atwood & Allen,*
 for Clark D. Chapman.

*Drummond & Drummond and William B. Mahoney,*
 for First Portland National Bank.

*William H. Payne, Jr.,* for defendant.

SITTING: WILLIAMSON, C. J., WEBBER, TAPLEY, DUBORD, SIDDALL, JJ. SULLIVAN, J., did not sit.

WILLIAMSON, C. J. On report. This is a bill in equity for the construction of the will of Perley A. Swasey. The case was heard on bill as amended, answers, replication and proof, and was reported upon so much of the evidence as is legally admissible. The complainants are Florence A. Swasey, widow of the testator, a beneficiary and co-executor under the will, and Perley A. Swasey, Jr., the only son of the

testator and a beneficiary. The respondents are: Clark D. Chapman, co-executor under the will, Good Will Home Association and The Imperial Council of the Ancient Arabic Order of the Nobles of the Mystic Shrine for North America, beneficiaries, sometimes called "the charities," and the First Portland National Bank and William H. Payne, Jr., co-trustees under the will. All parties interested in the estate are before the court.

The will was executed May 24, 1945. The testator died April 28, 1956, and the will was allowed in Cumberland Probate Court on May 15, 1956. The testator was survived by his wife and his only son Perley, Jr. At the time the will was executed the son was about 28 years of age and was then and is now a helpless invalid.

The gross estate was originally inventoried at approximately $1,400,000. The record does not disclose the division of assets between real estate and other property given to Mrs. Swasey and the residue. We may safely assume, however, that the bulk of the estate passes with the residue. Hence the construction and interpretation of the will are of substantial and immediate importance in the administration of the estate and to the beneficiaries.

Mr. Chapman, co-executor, who properly takes no position with respect to the contentions of the parties, points out "the very great practical importance to the orderly and economical conclusion of the executorship of this estate if this court, . . render a definitive decision as to the various questions which are presented by the parties interested." In particular, the co-executor notes the importance of an early decision on the issues relating to disposition of income received by the executors and to the asserted right of invasion of the corpus for benefit of the son with its possible effect upon the federal estate tax.

There are sound reasons for deciding these and certain other issues raised herein at the present time. *Fiduciary Trust Co.* v. *Brown,* et al., 152 Me. 360, 131 A. (2nd) 191; *Gannett, et al.* v. *Old Colony Trust Co.,* 155 Me. 248, 153 A. (2nd) 122.

"The controlling rule in the construction of a will is that the intention of the testator *expressed in the will,* if consistent with rules of law, governs." Chief Justice Fellows, in these apt words, stated the principle controlling in the instant case. *New England Trust Co., et al.* v. *Sanger et al.,* 151 Me. 295, 301, 118 A. (2nd) 760, and cases cited. Recent illustrative cases are *Swan* v. *Swan et al.,* 154 Me. 276, 147 A. (2nd) 140; *Jordan et al.* v. *Jordan et al.,* 155 Me. 5, 150 A. (2nd) 763.

We find the intention of the testator plainly expressed in the will. There is therefore no need to consider other evidence taken at the hearing upon testator's intent.

The pertinent parts of the will read:

"After the payment of my just debts, funeral charges and expenses of administration, I dispose of my estate, as follows:

"First:—If my wife, Florence M. Swasey, and my son, Perley A. Swasey, Jr., shall both survive me, or if my wife, said Florence M. Swasey, shall survive me, and my said son, Perley A. Swasey, Jr., shall not survive me, I dispose of my estate as follows:—

"A. In either of such events, I give and devise to my said wife, Florence M. Swasey, all real estate which I shall own at the time of my decease, including but not limited to my home and the surrounding parcels of land in said Falmouth, and lots or parcels of land in Portland, in said County of Cumberland, to have and to hold to her and her heirs and assigns forever.

412

"B. In either of such events, I give and bequeath to my said wife, Florence M. Swasey, all household furniture, furnishings, equipment and supplies, all automobiles, personal ornaments, jewelry and all other goods and chattels, excepting money, which I shall own at the time of my decease.

"C. In either of such events, I also give and bequeath to my said wife, Florence M. Swasey, the sum of one hundred thousand dollars ($100,-000.00).

"D. In either of such events, I direct that all inheritance or succession taxes on the devise and bequests to my said wife contained in subparagraphs A, B and C of this first section of my will shall be paid from the residue of my estate.

"E. In either of such events, I give and bequeath all of the rest, residue and remainder of my estate, of every name, nature and description, wherever found and however situated, and however and whenever acquired by me, to my Trustees hereinafter named, and their successors in trust, for the following uses and purposes:—

"(1) I direct that said Trustees shall pay the entire net income from said trust estate to my said wife, Florence M. Swasey, monthly from the date of my death or at such other times as my said wife and said Trustees shall agree, for and during the term of her natural life. I further direct that at the end of any year of the continuance of this trust from the date of my death that the aggregate net income so paid to my said wife shall not amount to the sum of at least thirty thousand dollars, a sufficient additional amount be paid to her from the principal of said trust estate, so that the aggregate payments for said year shall amount to said sum of thirty thousand dollars, unless my said wife shall in writing waive the payment of all or any part of such payment herein directed to be made to her from the principal of said trust estate.

"(2) In directing that all of said net income and such additional amounts as may be necessary to complete the payment of the sum of not less than thirty thousand dollars be paid to my said wife in each year, I am not unmindful of my said son, Perley A. Swasey, Jr. I make no provision for him during the lifetime of my said wife and I create no legal obligation that she shall so do, because I have every confidence that my said wife will in her own discretion and according to her own wishes adequately care for our said son.

"(3) If my said wife and son shall both survive me and if my said son shall survive my said wife, I direct that said Trustees shall from and after the death of my said wife expend such portions of the net income of said trust estate as they in their sole and absolute discretion shall deem to be for the welfare and benefit of my said son, Perley A. Swasey, Jr., during the term of his natural life, and that upon his death said Trustees shall pay the expenses of his last sickness and funeral, including a suitable gravestone for him. I place no limitation whatever upon the amount of net income that my said Trustees may in their sole and absolute discretion so expend for the support, maintenance, comfort, welfare, benefit and enjoyment of my said son. His physical condition will undoubtedly require substantial medical expense and constant attendance, all of which my said Trustees are authorized to provide from said net income without limit. My said Trustees may in their sole and absolute discretion maintain my said son in the residence occupied by him at the decease of my said wife or in such other residence as said Trustees and my said son or his guardian or conservator, as the case may be, shall from time to time agree upon and employ adequate help for the care and maintenance of said residence and for proper attendants for my said son from said net income, all without limit. My Trustees may also, in their sole and absolute discretion pay such sums at such times as they shall determine to my said son, or if

a guardian or conservator shall be appointed for my said son, said Trustees may pay such sums at such times as they shall determine to such guardian or conservator for the welfare and benefit of my said son. The interest of my said son hereunder shall not be anticipated, alienated or in any other manner assigned by him, and shall not be subject to any legal process, bankruptcy proceedings or the interference or control of creditors or otherwise.

"(4) Upon the death of the last survivor of my said wife, Florence M. Swasey, and my said son, Perley A. Swasey, Jr., I give, bequeath and devise all of said trust estate which shall then remain, real, personal and mixed, wherever/found and however situated, both principal and unexpended income, and I direct my Trustees to transfer, convey and deliver the same as follows:—

"(a) Two-thirds thereof to The Imperial Council of the Ancient Arabic Order of the Nobles of the Mystic Shrine for North America, a Colorado corporation, . . for the benefit of the Springfield Unit, located at Springfield, in the Commonwealth of Massachusetts, of the Shriners Hospitals for Crippled Children. The principal sum of this bequest and devise shall be retained and the net income only used for the benefit of said Springfield Unit of said Shriners Hospitals for Crippled Children, excepting that if the Board of Trustees of said corporation having control of said Shriners Hospitals shall determine to do so, all or part of the principal of said bequest and devise may be used for the construction of additional units of said hospital at said Springfield.

"(b) One-third thereof to Good Will Home Association, at Hinckley, in the County of Somerset and State of Maine. The principal sum of this bequest and devise shall be retained and the net income only used for the benefit of said Good Will Home Association, excepting that, if said Association shall determine to so do, all or part of the

principal of said bequest and devise may be used for the construction of additional units of Good Will Home."

There are identical provisions for the son and the charities in the second section of the will in the event his wife did not survive the testator, and identical provisions for the charities in the third section in the event neither the son nor the wife survived him. In the remaining sections are provisions relating to the executors and trustees.

We turn to the issues raised in the bill. All references herein to the will, unless otherwise noted, will be to the first section, *supra*.

I. *Income during administration.*

Is the widow entitled to the entire gross income from the estate during the period of administration, unimpaired? If not, to what income is she entitled?

In our opinion under E (1) the widow is entitled to the entire net income of the total estate from the death of the testator. We are not at this point concerned with the invasion of principal to meet required annual payments of $30,000 to the widow. By "net income" we mean the total or gross income from all sources including specifically income from property which has been used to pay debts, legacies and expenses, less all proper charges against income.

The income arising in the administration of the estate and not otherwise disposed of passes without question with the residue. Under the plain terms of the will, the widow is entitled to the net income from the residue from the death of the testator. The principle has long been established that in the absence of intention otherwise expressed in the will the beneficiary is entitled to income from date of the testator's death. See *Blair* v. *Blair,* 122 Me. 500, 122 A. 902; *Trust Co.* v. *Dudley,* 104 Me. 297, 72 A. 166; *Weld* v. *Putnam,* 70 Me. 209.

The real point in issue is whether that proportion of the net income derived from property subsequently used in payment of debts, legacies and expenses shall be considered income for the life beneficiary (the Massachusetts rule), or added to the principal of the residue (the New York rule).

In 1957 our Legislature enacted in substance the Massachusetts rule, "unless otherwise expressly provided by the will of a testator dying after the effective date of this act." R. S., c. 160, § 34 as amended by P. L., 1957, c. 183. Mr. Swasey died in 1956 and accordingly the act does not control the present case. We must determine the applicable rule without the benefit of the statute.

The difference in the rules arises from the treatment of the property used in payment of obligations of the estate, as stated above. Under the Massachusetts rule, the residue is formed at the death of the testator and the property so used is carved therefrom. The income is therefore income of the residue. Under the New York rule, such property is not considered to have been part of the residue. New York by statute has adopted in substance the Massachusetts rule.

We are satisfied that the Massachusetts or "income to life beneficiary" rule represents the better view. It gives to the beneficiary income to which he unquestionably would have been entitled had not the property from which it was derived been expended in the administration of the estate. Further, as Professor Scott points out, the rule "has the advantage of being simple and easy to apply." 3 Scott on Trusts § 234.4 (2d ed.). See also *Treadwell* v. *Cordis,* 71 Mass. (5 Gray) 341; *Old Colony Trust Co.* v. *Smith,* 266 Mass. 500, 165 N. E. 657; *City Bank Farmers' Trust Co.* v. *Taylor* (R. I.) 163 A. 734 (Mass. rule) ; *Wachovia Bank & Trust Co.* v. *Jones* (N. C.) 186 S. E. 335, 105 A. L. R. 1189 (Mass. rule) ; *Williamson* v. *Williamson* (N. Y.) 6 Paige 298; *Proctor* v. *American Security & Trust Co.,* 98 F. (2nd) 599 (U. S. C. A. D. C.) (New York rule).

The most recent statement of the rule which has come to our attention is found in Restatement, Trusts (2nd) § 234 (1959). We quote at length:

> "Except as otherwise provided by the terms of the trust, if property is held in trust to pay the income to a beneficiary for a designated period and thereafter to pay the principal to another beneficiary,

> "(a) where the trust is created by will, the former beneficiary is entitled to income from the date of the death of the testator;"
> \* \* \* \* \* \* \* \* \*
> Comment g: *"Income on property used in paying legacies, debts and expenses.* If the subject matter of the trust is the residue of the testator's estate, income received by the executor during the period of administration, including income derived from property which is subsequently used in paying legacies and discharging debts and expenses of administration, which has not been applied to the payment of interest on such legacies, debts and expenses, is payable to the trustee, and when received by him is payable to the beneficiary entitled to income.

> "In some States it has been held that the income from property used in paying legacies, debts and expenses of administration is to be treated as principal. In some of these States this method of allocation has proved unsatisfactory and the rule has been changed by statute."

The question apparently has not arisen in our court. In the *Blair* case, *supra,* the entire net income of the executors appears to have been included within income of the residue from death of the testator. There is no suggestion of an apportionment of such income between income and principal. In the *Weld* case, *supra,* the court cites with approval the *Williamson* case, *supra,* from New York and Massachusetts cases. There is nothing, however, in the case to sug-

gest that our particular problem was under scrutiny. The issue in both *Blair* and *Weld* was whether income commenced at the death of the testator and not what was included within income.

The 1957 statute did not in our view alter the law, but rather codified in substance the existing law.

II. *Income of widow after administration of estate.*

Three questions are raised by the complainants:

(1) Did the testator intend that the entire net income for his widow be diminished by costs of administration?

(2) Did the testator intend that his widow have at least $30,000 annually free from income tax?

(3) Did the testator intend that stock dividends and stock rights be considered principal or income?

(1) We find no intention on the part of the testator to shift the burden of costs of administration normally charged against income from income to principal. There is nothing to suggest, as we read the will, that the testator sought to alter the effect of rules generally applicable in the administration of trusts. The Probate Court will necessarily from time to time pass upon the proper allocation of expenditures by the trustees between income and principal. We do no more than determine that under the will the net income to which the widow is entitled is the total income of the trust less all expenses properly chargeable against income.

(2) The beneficiary of income from a trust ordinarily must bear the burden of the federal income tax. It is the income of the beneficiary that is so taxed, not the income of the trust. The widow urges that the general rule is not here applicable, and that the testator's intention as expressed in his will places the tax upon the principal of the

trust. We do not agree with this position. We find nothing in the will to indicate any intention on the part of the testator to change the ordinary impact of the federal income tax. Had he intended in some manner, which we need not explore, to shift the burden to the principal of the trust, surely he would have expressed his intention in apt words. The income tax must rest where it falls under federal law.

(3) On the allocation of stock dividends and stock rights between income and principal, we find no intention on the part of the testator to alter the application of the general rules, namely, that they are considered principal. *Thatcher* v. *Thatcher*, 117 Me. 331, 104 A. 515; *Harris* v. *Moses*, 117 Me. 391, 104 A. 703; 3 Scott on Trusts 2d ed. §§ 236.7, 236.9; Restatement, Trusts 2d § 236.

As in our discussion of costs of administration, we do not here determine the result in any given situation. There may of course be facts surrounding a given stock dividend or stock right which would change the allocation between income and principal. In short, what we are here saying is that there is nothing in the will to alter the operation of applicable general rules. See *Moore et al.* v. *Emery et al.*, 137 Me. 259, 268, 18 A. (2nd) 781.

III. *The widow's estate.*

The widow contends (1) that she is entitled to the custody and management of the corpus of the trust estate during her life, and (2) that she is entitled to an absolute estate in the residue. The will, as we read it, plainly does not give an interest or estate of such wide extent to the widow. The residue of the estate is given and bequeathed to trustees.

In the fourth section of the will, the testator named and appointed a bank and an individual as trustees. He directed that the "trust or trusts . . . be at all times administered by

two Trustees, one of whom shall be a corporation and the other of whom shall be an individual." The testator proceeded in the fifth section to give to his trustees "not in limitation of the ordinary powers of trusteeship but in addition thereto, the following powers:—" relating to the management of the trusts. In particular, he urged the trustees to hold shares of The Warner & Swasey Company and American Telephone and Telegraph Company "without creating any legal obligation to so do."

The first beneficiary of the trust under E (1) is the widow to whom the trustees are directed to "pay the entire net income from said trust estate" during her life. To this point surely the widow gained no more than a life interest in the income.

There follows the direction for invasion of the principal (unless waived by the widow) to meet the required aggregate payment to the widow of at least $30,000 annually. The testator thus created a "floor" of $30,000 on the cash his widow should be entitled to receive each year, first from income and the balance from principal. The testator chose, as he had the power to choose, to place a limit, namely $30,000 less net income, on the right of the trustees to draw on the principal for payment to the widow. To this point we find the widow was given the net income for life plus a limited right to invade the principal. This is the extent of her interest in the trust property.

In E (2) the testator explained the reason for making no provision for his son during his widow's life. The gift under E (1) was made with his son in mind and with "every confidence that my said wife will in her own discretion and according to her own wishes adequately care for our said son." The widow gains nothing from E (2).

Upon the death of the widow the provisions for the son during his life come into operation under E (3). On the

death of the widow and son the charities under E (4) take "all of said trust estate which shall then remain . . . both principal and unexpended income."

It is argued that in view of the right to invade the principal (E (1)) and the gift of "all of said trust estate which shall then remain, ." the widow thereby acquired an absolute estate in the property free from trust and free from any interests of the son and the charities. On behalf of the widow it is said that by reason of the right to invade principal under E (1), the entire estate was placed at disposal of the widow. Undoubtedly the entire estate is subject to repeated annual withdrawals, but only to the limited extent stated in the will. The widow may not demand more from the trustees, and the trustees may not give to her more from the estate than the amount required to meet the stated $30,000. Right to draw on principal to a limited extent each year is not the right of disposal of principal generally.

The argument is further made that "which shall then remain" in E (4) also gives to the widow, entitled to the income, the right to unlimited disposal of the principal. Obviously on this theory the provision for the son after his mother's death would have no certainty whatsoever. The situation before us differs widely from the typical gift of a small estate to the widow with whatever remains to the children. In such a case the right to dispose of the principal is recognized in application of the principle that the intent of the testator controls. *Stewart* v. *Stewart,* 148 Me. 421, 94 A. (2nd) 912, heavily relied upon by the widow, presents a like situation within the framework of a trust for use and benefit of testator's son, with "the same or what remains" to his grandson.

In the case at bar we have the carefully drawn trust, the direction to pay net income to the widow, and the right to use principal to a limited extent only. There are the gifts

over, after the widow's life interest, for the benefit of their helpless son during his life. The intent of the testator stands forth in the will in straightforward words and without ambiguity. The widow takes the net income for life with a limited right to draw on principal and no more under Clause E.

## IV. *The son's estate.*

As in the case of the other beneficiaries, we are asked to determine what estate, legal or equitable, the son acquired under the will. In the brief of counsel for the widow, the issues are stated substantially in these words: (a) After the death of his mother did the testator intend his crippled helpless son to have an absolute estate? (b) Did the testator intend that the corpus of his estate should be invaded without limit, with limit, or not at all, for the welfare and benefit of his crippled helpless son after the death of the mother?

The interests of the son under the will are found in E (3), which will become operative if and when the son shall survive his mother. The construction of this provision of the will is requested at this time to enable the executors to properly carry out their duties, particularly with respect to the federal estate tax. It is readily understood that this tax is of very substantial consequence to the estate and to the beneficiaries and ought to be determined in the near future.

The issues do not center upon the precise obligations of the trustees in the exercise of their wide discretionary authority in the expenditure of net income for the "support, maintenance, comfort, welfare, benefit and enjoyment of my said son." See *Murray, Appellant,* 142 Me. 24, 45 A. (2nd) 636; *Alford* v. *Richardson,* 120 Me. 316, 114 A. 193. The net income can be spent only for the benefit of the son. Any unexpended income will pass to the charities under E (4). The testator threw about his son the protection of

a prohibition against anticipation or alienation by his own will or in *invitum*.

The courts will be open to direct the trustees and to guard the interest of the son.

> ". . when trustees, who are vested with the exercise of a discretion, fail to properly exercise that discretion either from lack of good faith or because of a misunderstanding of the scope of the trust and their powers and duties therein, a court of equity has jurisdiction to interfere and give directions to the end that the trust may be properly carried out." *Woodward* v. *Dain,* 109 Me. 581, 583, 85 A. 660.

See also Restatement, Trusts (2nd) § 187; 2 Scott on Trusts § 187.2 (2nd ed.).

The chief point in issue is whether the trustees may in the exercise of their discretion invade the corpus of the estate for the welfare and benefit of the invalid son. The argument for invasion hinges upon the meaning of the language quoted below from E (3) and E (4).

> "My Trustees may also, in their sole and absolute discretion pay such sums at such times as they shall determine to my said son, or if a guardian or conservator shall be appointed for my said son, said Trustees may pay such sums at such times as they shall determine to such guardian or conservator for the welfare and benefit of my said son, ." (E (3)).

> ". . I give, bequeath and devise all of said trust estate which shall then remain, real, personal and mixed, wherever/found and however situated, both principal and unexpended income, . ." (E (4)).

In our view the sentence from E (3) relates back to the several provisions on net income. It touches authority in the expenditure of net income, and not authority to draw

on the principal of the trust for the benefit of the son. It may well be convenient for all concerned that the trustees make payments from the net income directly to the son, or to his guardian or conservator, for payment of, let us say, the usual recurring living and household expenses. The provision is designed to relieve the trustees of responsibility in this type of situation. If the testator had intended to reach the result sought in behalf of the son, namely, that the trustees could invade the principal of the trust for his benefit, we may reasonably believe the testator would have so expressed his purpose in apt words.

It is further urged that the gift to the charities in E (4), and in particular the words "which shall then remain," point irresistibly to a right of invasion on the part of the trustees, and also to an absolute estate in the son free from trust. We do not agree with this contention. It is unnecessary to repeat the discussion under "the widow's estate" on this score. The principles stated in *Stewart* v. *Stewart, supra,* are no more applicable here than in the case of the widow.

The interest of the son under his father's will is found within the trust under Clause E, and more particularly under E (3). This interest cannot be extended under E (4). In short, there is a valid trust, with net income plus limited principal for the widow for her life, and thereafter with net income in hands of trustees for benefit of the son for his life, and with the remainder to charities at the end of the life interests.

V. *The estates of the charities.*

Obviously under E (4) the charities take every interest in the residue not taken by or for the benefit of the widow and son. There is no occasion here to consider the particular terms and conditions of the gifts.

We have sought to find and give effect to the intention of the testator expressed in his will. There is in this instance no prohibition of law against carrying out this intention. See *First Portland Nat. Bank, Exr. Applt. et al., In re will of Elinor S. Moody* (August 26, 1959), 154 A. (2nd) 165. It is not our province to pass judgment on the wisdom or lack of wisdom of the testator's disposition of his property.

The will of the testator controls. We must not write a new will for him. These are familiar and well understood principles of law. It is in their application that difficulties so often arise.

The entry will be

> *Case remanded for a decree in accordance with this opinion. The costs and expenses of the parties including reasonable counsel fees to be fixed by the sitting justice after hearing and paid out of the principal of the estate by the executors or trustees as may be ordered.*