In Equity.

LYDIA A. BODFISH et als. *vs.* SAMUEL G. BODFISH et als.

Piscataquis.    Opinion February 26, 1909.

*Wills.   Construction.   Rules of Interpretation.   Life Estate.   Power of Disposal.*

It is a well established rule in Maine that when a testator gives to the first taker an estate for life only by certain and express words, the question whether a power to dispose of the remainder is annexed to the conventional life estate, depends upon the construction of the instrument under which the power is claimed.

In construing a will the intention of the testator is to have a controlling influence in the interpretation of the clause or phrase especially involved in the inquiry, provided no settled rule of law or principle of sound public policy is thereby violated.

In construing a will the intention of the testator must be collected from the language of the whole instrument interpreted with reference to the avowed or manifest object of the testator ; and all parts of the will must be construed in relation to each other so as to give to every provision its proper field of operation, and to every word its natural and appropriate meaning.

In case of ambiguity, it is well settled that all the surrounding circumstances of the testator, his family, the amount and character of his property, may and ought to be taken into consideration in giving a construction to the provisions of his will.

A testator's will contained the following provisions :

" First.   I give, bequeath and devise unto my wife Lydia A. Bodfish of said Elliottsville all the property, real, personal and mixed which I shall own or be possessed of at the time of my decease, for and during the term of her natural life.

"Second.   After the decease of said Lydia A. Bodfish, I give, bequeath and devise unto my son, John I. Bodfish lot number (1) in the third range of lots in the Vaughan Tract in said Elliottsville, and called the Major Sawyer lot, and containing one hundred acres more or less.

"Third.   After the decease of said Lydia A. Bodfish I give, bequeath and devise unto my son Samuel G. Bodfish, lot number six (6) in said third range of lots, in said Vaughan Tract and called the Wilbur lot.

"Fourth. I give and bequeath unto my daughter Marion A. White, widow of Flavius E. White the sum of two hundred dollars, to be paid to her within one year after the decease of my said wife, Lydia A. Bodfish.

"Fifth. I give, bequeath and devise to my son Rodney R. Bodfish and my daughter Sarah E. Bodfish in equal shares in common and undivided all the rest, residue and remainder of the property which shall be left after the decease of my said wife. And should either my said daughter Sarah E. Bodfish or my son Rodney R. Bodfish die before the decease of my said wife, Lydia A. Bodfish, then his or her part of the property described in this fifth clause of my will shall go to the husband or the wife of the said Sarah E. Bodfish or Rodney R. Bodfish if the said Sarah E. Bodfish or the said Rodney R. Bodfish shall have a husband or wife living at the time of their decease, if not then the whole property described in this fifth clause of my will shall go to the survivors of the said Sarah E. Bodfish or Rodney R. Bodfish upon the death of either.

"This bequest and devise to said Sarah E. Bodfish and Rodney R. Bodfish is made on the condition that they remain at home and care for said Lydia A. Bodfish while she shall live and that they pay to said White the two hundred dollars bequeathed to her by the fourth clause of this will."

*Held:* That the testator intended to give to his wife Lydia A. Bodfish a simple life estate in all his property with the further provision for her care and comfort contained in the fifth paragraph of the will, and that it was not his purpose to annex to this life estate the power to dispose of any part of the property.

In equity. On appeal by defendants. Sustained.

Bill in equity brought to obtain a judicial construction of the last will and testament of Nymphas Bodfish late of Elliottsville. An answer was duly filed by the defendants. A hearing was then had on bill, answer and evidence before the Justice of the first instance who sustained the plaintiffs' contentions and made and entered a decree to that effect. The defendants then appealed to the Law Court as provided by Revised Statutes, chapter 79, section 22.

The case is stated in the opinion.

*J. S. Williams*, for plaintiffs.

*Hudson & Hudson*, for defendants.

SITTING: EMERY, C. J., WHITEHOUSE, SAVAGE, PEABODY, BIRD, JJ.

WHITEHOUSE, J. This is a bill in equity brought to obtain a judicial construction of the following will of Nymphas Bodfish of Elliottsville in the county of Piscataquis, dated April 19, 1904.

First. I give, bequeath and devise unto my wife Lydia A. Bodfish, of said Elliottsville, all the property, real, personal and mixed, which I shall own or be possessed of at the time of my decease, for and during the term of her natural life;

Second. After the decease of said Lydia A. Bodfish, I give, bequeath and devise unto my son John I. Bodfish, Lot No. One in the Third Range of lots in the Vaughan tract in said Elliottsville, and called the Major Sawyer lot, containing one hundred acres more or less;

Third. After the decease of said Lydia A. Bodfish, I give, bequeath and devise unto my son Samuel G. Bodfish lot No. Six in said Third Range of lots in said Vaughan track, and called the Wilbur lot;

Fourth. I give and bequeath unto my daughter Marion A. White, widow of Flavius E. White, the sum of two hundred dollars, to be paid to her within one year after the decease of my said wife, Lydia A. Bodfish;

Fifth. I give, bequeath and devise unto my son Rodney R. Bodfish and my daughter, Sarah E. Bodfish in equal shares, in common and undivided all the rest, residue and remainder of the property that shall be left after the decease of my said wife, and should either my said daughter, Sarah E. Bodfish, or my said son, Rodney R. Bodfish, die before the decease of my said wife Lydia A. Bodfish, then his or her part of the property described in this 5th clause of my will, shall go to the husband or the wife of the said Sarah E. Bodfish, or the said Rodney R. Bodfish, if the said Sarah E. Bodfish, or the said Rodney R. Bodfish shall have a husband or wife living at the time of their decease; if not, then the whole property described in this 5th clause of my will shall go to the survivor of the said Sarah E. Bodfish, or the said Rodney R. Bodfish upon the death of either. This bequest and devise to said Sarah E. Bodfish and Rodney R. Bodfish, is made on the condition that they remain at home and care for said Lydia A. Bodfish while she shall live, and then they pay to the said White the $200 bequeath to her by the fourth clause of his will.

Sixth.    I appoint Edmund F. Drew executor of this my last will and testament."

The testator died June 17, 1904 at the age of eighty-two years.

The plaintiffs in this bill are Lydia A. Bodfish, the widow, Rodney R. Bodfish one of the sons, Sadie E. (Bodfish) Drew, the younger daughter of the testator, and Edmund H. Drew, husband of Sadie E. Drew and executor of the will.    The defendants are Samuel G. Bodfish and John I. Bodfish sons, and Marion A. White, the elder daughter of the testator.

The homestead of the deceased was situated on Long Pond Stream in Elliottsville, Piscataquis county, distant about twelve miles by the highway from Monson Village, and five miles across Onawa Lake to Onawa Station on the Canadian Pacific Railway.

The estate of the deceased was appraised as follows :

Home farm consisting of 200 acres of land and buildings, $2000.
400 acres of timber land, 800.
100 acres of timber land, called the Wilbur lot, 200.
100    "        "            "        Sawyer lot, 200.

$3200.

Personal estate consisting principally of household furniture and farming implements, $438.55
with "rights and credits appraised at 212.00

It is admitted that the amount of the debts left by the testator, as shown by the executor's first account, is $223.01.

It appears from the bill and answer and is not controverted in testimony, that by consent of the widow, the executor of the will and husband of Sadie E. Drew, one of the residuary devisees in the will, gave to one Gilbert a permit to cut the lumber from the Wilbur lot devised to Samuel G. Bodfish in paragraph three of the will, by virtue of which, lumber of the value of $400 was taken from that lot by Gilbert ; and that this stumpage is claimed both by the widow and by the defendant Samuel G. Bodfish.

The plaintiffs contend that by the terms of the will, the widow Lydia A. Bodfish took a life estate with a power of disposal of all the property real and personal, including the Sawyer lot and the

Wilbur lot specifically devised in items two and three of the will, and hence had an undoubted right to cut the wood and lumber or sell stumpage from any or all of the timber lands which belonged to the estate at the death of the testator. On the other hand the defendants earnestly contend that when all the provisions of the will are considered together and viewed in the light of the nature and value of the property, the testator's relations to the several beneficiaries and all of the conditions which may fairly be supposed to have been in his mind at the time of the execution of the will, the conclusion is irresistible that he intended to give the widow precisely what he did give her in clear and explicit terms in the first paragraph of the will, viz: "All of his property, real, personal and mixed," "for and during the period of her natural life," with the further provision in the fifth paragraph, devising the remainder, after the termination of the life estate, to his two children Rodney and Sarah, on condition that they remain "at home and care for said Lydia A. Bodfish while she shall live" and then pay to Mrs. White the $200 bequeathed to her in item four of the will. The defendants accordingly claim that the widow's life estate was not coupled with a power of disposal as to any part of the property, and that if it should be held otherwise, they insist that such power of disposal could not in any event extend to the Sawyer and Wilbur lots specifically devised in paragraph two and three of the will.

The presiding Justice sustained the plaintiffs' contentions and entered a decree that the power of disposal was annexed to the widows' life estate as to all of the property belonging to the estate at the death of the testator. The case comes to this court on the defendants' appeal from that decree.

It is undoubtedly an established rule in this State, uniformly recognized by the decisions of this court from *Ramsdell* v. *Ramsdell*, 21 Maine, 288 to *Young* v. *Hillier*, 103 Maine, 17, that when the testator gives to the first taker an estate for life only by certain and express words, the question whether a power to dispose of the remainder is annexed to the conventional life estate, depends upon the construction of the instrument under which the power is claimed. In construing wills for the purpose of determining this question as

well as all others, the intention of the testator is to have a controlling influence in the interpretation of the clause or phrase especially involved in the inquiry, provided no settled rule of law or principle of sound public policy is thereby violated. This intention must be collected from the language of the whole instrument interpreted with reference to the avowed or manifest object of the testator; and all parts of the will must be construed in relation to each other so as to give to every provision its proper field of operation, and to every word its natural and appropriate meaning. *Wentworth* v. *Fernald*, 92 Maine, 282; *Shaw* v. *Hussey*, 41 Maine, 495; *Young* v. *Hillier*, 103 Maine, 17. Furthermore, in case of ambiguity, "it has long been well settled and indeed it is a principle so consonant to reason that the only wonder is that it should ever have been questioned, that all the surrounding circumstances of a testator,—his family, the amount and character of his property, may and ought to be taken into consideration in giving a construction to the provisions of his will." Postlewaite's Appeal, 68 Pa. St. 477. "In view of the circumstances under which the testator made his will, as to his property, or his family, the meaning of his words may be plain when otherwise it would be uncertain." Follweiler's Appeal, 102 Pa. St. 583.

In the case at bar it has been seen that after giving to his wife a simple life estate in all of his property, and then specifically devising to his son John the Sawyer lot and to his son Samuel the Wilbur lot after the decease of the widow, and giving to the elder daughter a legacy of $200 payable in one year after the death of the widow, the testator uses the following language in the fifth paragraph of the will, viz: "I give, bequeath and devise to my son Rodney R. Bodfish and my daughter Sarah E. Bodfish in equal shares in common and undivided, all the rest, residue and remainder of the property which shall be left after the decease of my said wife . . . . on condition that they remain at home and care for said Lydia A. Bodfish while she shall live and that they pay to said White the $200 bequeathed to her by the fourth clause of the will."

It is not claimed by the plaintiffs that either by force of this language in the fifth paragraph or that of any other provision of the will, a power of disposal is expressly ·annexed to the life estate. But it is claimed that by the use of the words "rest, residue and remainder of the property that shall be left after the decease of my said wife," interpreted with reference to the other parts of the will and to existing circumstances, a power of disposal is given to the widow by implication. It is not contended, however, that this devise of the "remainder of the property that shall be left" necessarily creates a power of disposal in favor of the widow as a matter of law. On the contrary, it is conceded that whether or not such a result will follow from the use of the language quoted, must depend upon the intention of the testator as disclosed by all of the provisions of the will examined in the light of such attending circumstances and manifest objects as may reasonably be supposed to have been in the contemplation of the testator at the time of making the will, such as the condition of his family, and the situation and amount of his property.

There are several familar cases in this State and Massachusetts in which it has been held that language of similar import to that used in the residuary clause in the case at bar, considered in relation to the peculiar facts and circumstances existing in each instance, justified the inference that the intention of the testator was to give the widow a life estate coupled with a power of disposal. But in the examination of each case that arises it must be remembered that it is not the function of the court to substitute its judgment for that of the testator in determining what is a suitable and sufficient provision for the widow but to disclose what the real purpose of the testator was with respect to that question.

In the early case of *Scott* v. *Perkins*, 28 Maine, 22, the testator gave to his wife all of his property to be used and disposed of by her for her convenience and comfort during her life "and divided among his children" "what may remain" after the decease of the wife. Here the use of the words "to be used and disposed of by her" left no uncertainty as. to the intention of the testator in the use of the word "what may be left" in the residuary clause.

In *Shaw* v. *Hussey*, 41 Maine, 495, a leading case in this State, the testator placed all of his personal property at the disposal of the wife and provided that at her decease "all of the real estate that may be unexpended by her" should be divided among the devisees named. The court held that the power of disposal extended to the real estate, and for the purpose of explaining the significance of the words "that may be unexpended by her" quoted from the opinion of the court in *Harris* v. *Knapp*, 21 Pick. 412, as follows:

"The words 'whatever shall remain,' necessarily mean, that portion of the property bequeathed, which shall be undisposed of at her decease; but there is no allusion in the will to any mode, by which the sum thus given, is to be diminished, excepting the disposition thereof, to be made by Mrs. Harris, and therefore the implication is inevitable."

So also in *Warren* v. *Webb*, 68 Maine, 133, the testator gave all of his property to his wife during her life "for her proper use, benefit and support, and after her decease" said property, or the residue and remainder thereof "to be divided among his children." The court said: "This language necessarily implies the liability of the estate to be diminished while in the hands of the devisee; and as there is no provision in the will for its diminution except through her agency, her right of control, and even of disposal, is inescapable."

It has been seen that in this respect there is a vital distinction between the cases last cited and the case at bar, for in the latter case the property comprised in the life estate given to the wife, was to be diminished by the two specific devises of the Sawyer lot and of the Wilbur lot to the sons John and Samuel respectively and the legacy of $200 to the daughter Mrs. White.

In *McGuire* v. *Gallagher*, 99 Maine, 334, the testator gave all of his property to his wife, during her life "to be used by her according to her desire" and then directed that "all the property remaining" be divided among her brothers and sisters. This language was interpreted in connection with the terms of the first clause and with the fact that the income of the estate was "manifestly insufficient for her support." Again in the recent case of

*Young* v. *Hillier*, 103 Maine, 17, where the testator gave to his wife, all of his property real and personal "for her use during life," and to his daughter "whatever may remain of said estates," there was no reference to any other mode of diminishing the "estates" except by the wife's use of the property, and inasmuch as the income of the estate was palpably insufficient for the support of the widow and she was possessed of no other means, the court reached the conclusion that the testator intended to give her a power of disposal.

In the case at bar the property of the testator was appraised at $3850. In addition to the home farm consisting of 200 acres of land with the buildings, the estate embraced 600 acres of timber lands and its market value was doubtless in excess of the appraisal. It includes highly productive intervale land which is enriched by the fertilizing deposits of the adjacent hills, and in the year 1907 cut forty tons of hay, a product which has a ready market and commands high prices for lumbering operations in that vicinity. But in view of the limited right of a life tenant to cut timber from the life estate, the testator did not wish to leave his widow dependent for her maintainance solely upon the rental of the property, but made what he evidently considered a further very important provision to insure her support and comfort during her life by devising "all the rest, residue and remainder of the property that shall be left" at the termination of the life estate, to the two younger children Sarah and Rodney "on condition that they remain at home and care for the said Lydia A. Bodfish while she shall live." It is true that they were not required to give any bond for the support of their mother. But the testator had lived on the home farm for 78 years and by the fruits of his labor had supported a wife and five children, and added 600 acres of timber lands to his possession. His wife was then sixty-three years of age and it probably never occurred to his mind that such an obligation was necessary. He undoubtedly believed that the residuary devisees would be willing and glad to accept 600 acres of land with the house in which he and his family were then living and the other buildings which he was then occupying, for the sole consideration of remaining at home

and caring for "their own mother during the few years of life remaining to her." As tending to show also, a desire and purpose on his part to keep the entire property in the family at least during the lifetime of his wife and to provide a home for her on the premises, there is great significance in the care with which he explicitly provides in the same paragraph of the will, that in the event of the decease of the daughter before the death of her mother, her share of the property shall go to her husband, and in the event of the death of Rodney before the decease of his mother, his share of the property should go to his wife, but if Sarah should leave no husband or Rodney no wife, then upon the death of either, the whole property devised to them should go to the survivor.

But it is said that the buildings were in a dilapidated condition and that a large amount must be expended in repairing the house and rebuilding the barn. Here again the situation must be considered from the standpoint of the testator. He knew the style of life to which his wife had been accustomed, and knew that her wants would be few and simple. He knew that there was an abundance of timber in the 400 acre lot not devised to John and Samuel, that would be available for all necessary repairs, and understood that by agreement between the mother and the children Sarah and Rodney, stumpage could be sold from the 400 acre lot without objection from the other heirs, to procure all the material required for such repairs and improvements.

It is conceded that there is clearly discernable through the several provisions of the will a purpose on the part of the testator not only to make a suitable and sufficient provision for the support of the widow but to place the devises and bequests to his children on a basis of equality as far as practicable. He gives to the elder daughter a legacy of $200, and to John and Samuel each a lot of land of the value of $200, and all that is left of the property, after taking out this legacy and the specific devises, he gives to Sarah and Rodney on the conditions specified. But it is obvious that if an unqualified right to dispose of all the property is vested in the widow, as claimed by the plaintiff, she would have the power to defeat these specific devises and the legacy to Mrs. White at her

discretion, and nullify these explicit provisions of the will. It has been seen that she and the residuary devisees have already attempted to exercise such a power by selling the stumpage from the Wilbur lot. Such a construction of the will would also render its provisions contradictory and inoperative in another respect. A general power of disposal in the widow would enable her to sell and convey the homestead to a stranger and thus prevent Sarah and Rodney from remaining at home and caring for their mother and wholly deprive them of the opportunity to perform the condition upon which the remainder of the property was devised to them.

When therefore all parts of the will are considered with reference to each other so as to give to every phrase and clause the meaning and effect which it was clearly designed to have, and the instrument is critically examined in the light of the situation and the amount of the testator's property, the thoughtful provisions actually made for the care and comfort of the widow, on the homestead farm, his manifest desire and purpose to make just and equal devises and bequests to his children, and all of the memories and associations connected with the history of this property, it is impossible to resist the conclusion that the testator intended to give to his wife Lydia A. Bodfish a simple life estate in all of his property with the further provision for her care and comfort contained in the fifth paragraph of the will, and that it was not his purpose to annex to this life estate the power to dispose of any part of the property.

It is accordingly the opinion of the court that the certificate must be,

*Appeal sustained.*
*Decree below reversed.*
*New decree in accordance with the opinion.*