POMEROY D. JORDAN, LAWRENCE L. JORDAN,
STEWART C. JORDAN, PHILIP N. JORDAN,
EMMA F. JORDAN, CAROLYN V. TRYNOR
AND MERLE R. JORDAN
*vs.*
GLADYS I. JORDAN, NORMAN R. JORDAN,
WILLIAM H. JORDAN
(SOMETIMES KNOWN AS HENRY JORDAN)
AND
GLADYS I. JORDAN, AS ADMINISTRATRIX, C. T. A.
OF ESTATE OF EMMA D. JORDAN

Cumberland. Opinion, April 29, 1959.

*Linnell, Perkins, Thompson,*
*Hinckley & Thaxter,* for plaintiff.

*Harry C. Libby,*
*Sidney W. Wernick,* for defendant.

SITTING: WILLIAMSON, C. J., WEBBER, TAPLEY, SULLIVAN, DUBORD, SIDDALL, JJ.

TAPLEY, J. On report. The plaintiffs seek construction of the will of Emma D. Jordan, late of Cape Elizabeth, Maine, who died on July 5, 1945. The will was drafted by the testatrix without benefit of counsel and is couched in the following language:

"Will of Emma D. Jordan

Dec. 7, 1944

I want the money from my share in Father's farm deposited in the Maine Savings bank for Henry it can be used to build a house for him on the lot I have reserved for him, I put in trust with Gladys.

I give my bank book in Casco bank So. Portland to Everett to pay my funeral expenses.

Take me to S. S. Rich or Hay and Peabody at once.

Let what pieces of furniture Norman wants left.

Let Philip have his furniture and what other he wants.

Emma D. Jordan

Everett C. Jordan
Dorothy S. Jordan
Gladys I. Jordan"

The will was duly admitted to probate and an administratrix, c.t.a. was appointed and qualified. The administratrix, c.t.a. is Gladys I. Jordan, a daughter of the testatrix.

Emma D. Jordan was survived by a daughter, Gladys I. Jordan and seven sons, Pomeroy D. Jordan, Lawrence L. Jordan, Stewart C. Jordan, Philip N. Jordan, Norman R. Jordan, Everett C. Jordan and William Henry Jordan, sometimes known as and called Henry Jordan. The son, Everett C. Jordan, who survived his mother, died intestate on October 9, 1951, leaving a widow, Emma F. Jordan, and as his sole heirs at law, Merle R. Jordan and Carolyn V. Trynor. Henry Jordan was, on December 7, 1944 and for sometime previous, *non compos mentis*. His mother, Emma D. Jordan, at the time of the execution of the will, was aware of his mental deficiency. Henry, prior to the death of his mother, was not under legal guardianship but after her death, Gladys I. Jordan was appointed his guardian upon petition filed in the Probate Court.

At the time of her death, Emma D. Jordan was seized and possessed of one-third interest in common and undivided of certain lots or parcels of land, with buildings thereon, situated in Cape Elizabeth. This property was commonly known as and called "Nathaniel Dyer Farm." Emma D. Jordan acquired the one-third interest under the last will and testament of her father, Nathaniel Dyer.

The plaintiffs claim (1) that the will, having been witnessed by the wife of a beneficiary thereunder, is void under provisions of Chap. 169, Sec. 1, R. S., 1954; (2) that the three children of the testatrix, namely, Pomeroy D. Jordan, Lawrence L. Jordan and Stewart C. Jordan, not having been mentioned in her will, are pretermitted heirs, within the meaning of Chap. 169, Sec. 9, R. S., 1954; (3) that the language used by the testatrix is not dispositive but only expresses desire; (4) that paragraph 1 of the will

does not create a valid and enforceable trust due to indefiniteness as to the intention of the testatrix.

The parties to the action agreed by stipulation,

"That all of the children of said Emma D. Jordan received in equal or nearly equal proportions substantial gifts in cash or otherwise from their mother, the said Emma D. Jordan, prior to her death."

and,

"That at no time prior to the execution of her Will or prior to her death did Emma D. Jordan place any property, real, personal or mixed in trust with Gladys I. Jordan for, or for the benefit of, Henry Jordan or any other person."

Plaintiffs contend that the last will and testament of Emma D. Jordan is void and of no effect because one of the witnesses thereto was Dorothy S. Jordan, the wife of Norman R. Jordan, a son of the testatrix and a legatee named in his mother's will, who was beneficially interested under the will. (Chap. 169, Sec. 1, R. S., 1954.) This contention is without merit. The parties to the action admit the will was probated. The fact that it was probated is conclusive proof of its execution. Chap. 169, Sec. 15, R. S., 1954. Page on Wills, Vol. 4, Chap. 49, Sec. 1604:

"In a suit for construction the proper execution of the will as probated is assumed."

See *Knapp, Appellant,* 145 Me. 189.

The three children of the testatrix, namely, Pomeroy D. Jordan, Lawrence L. Jordan and Stewart C. Jordan, were not mentioned in her will. They are claiming to be pretermitted heirs, within the meaning of Sec. 9, Chap. 169, R. S., 1954 (formerly Sec. 9, Chap. 155, R. S., 1944). The pertinent portion of this statute reads:

"A child, or the issue of a deceased child not having any devise in the will, takes the share of

the testator's estate which he would have taken if no will had been made, unless it appears that such omission was intentional, or was not occasioned by mistake, or that such child or issue had a due proportion of the estate during the life of the testator."

The law presumes that the omission to provide for a child in a will is the result of forgetfulness, infirmity or misapprehension, and not by design. *Walton, et al.* v. *Roberts,* 141 Me. 112. This presumption, however, is rebuttable. Extrinsic evidence is admissible to show the omission as being intentional. In the case of *Ingraham, Appellant,* 118 Me. 67, the court, on page 70, said:

"The evidential office of the will is to prove that the child is without devise under it. The inquiry as to whether he was omitted therefrom by design and without mistake, and not by blunder or oversight, arises under the statute. Seeking the testator's *intention* it is pertinent to inquire, consonantly with the law of evidence, concerning him and his son; the affection, or lack thereof, that subsisted between them; of the motives which may be supposed to have operated with the testator, and to have influenced him in the disposition of his property. All the relevant facts and circumstances, including the intention of the testator as he declared it before, at, or after the making of the will, may be shown."

See *Whittemore* v. *Russell,* 80 Me. 297.

There is evidence in this case which discloses, in light of all the circumstances, that Emma D. Jordan intended to omit her three sons as devisees. A witness in the person of one Dorothy Simpson Jordan, upon inquiry, testified in substance that she had occasion to talk with the testatrix, Emma D. Jordan, prior to the execution of her last will and testament. She was asked the question:

"Q. Can you tell us what Emma D. Jordan said to you about that will?"

and her answer was:

> "A. Yes, I can. She said to me that she had taken care of the rest of her children except Gladys, whom she felt was able to take care of herself, and what she had left she wanted to go to Henry. She naturally worried about him, and she wanted to feel, when he did get out of the hospital, he would have something and what she had left, she wanted him to have."

Another witness, Norman R. Jordan, testified that his mother talked with him a few months before she executed her will by saying:

> "A. She wanted what was left in her share in her father's farm left to Henry.
>
> Q. Did she say why?
>
> A. Yes.
>
> Q. Will you tell us why she said that?
>
> A. That was all there was left and the rest of us had had what she could give us."

A preponderance of the evidence shows that the omission from the will of the three sons as devisees was intentional and by design. The contention that Pomeroy D. Jordan, Lawrence L. Jordan and Stewart C. Jordan, being sons of Emma D. Jordan, the testatrix, were unintentionally omitted from the will as devisees is untenable.

Plaintiffs, in contention, further say that the language used by the testatrix is not dispositive but merely expresses desire and that paragraph 1 of the will does not create a valid and enforceable trust due to its indefiniteness as to the intention of the testatrix. Paragraph 1 of the will reads:

> "I want the money from my share in Father's farm deposited in the Maine Savings bank for Henry it can be used to build a house for him on the lot I have reserved for him, I put in trust with Gladys."

Plaintiffs argue that the language used by the testatrix in her will is more of an expression of desire rather than being dispositive and that it is in nature precatory and not mandatory. In the analysis of any portion of a will, with the view of construing it, great care must be used in arriving at the intention of the testator as it is paramount that the will speak as the testator intended. Intention must be found from the language of the will taken as a whole because as Justice Thaxter stated in *Moore* v. *Emery,* 137 Me. 259, at page 277: "There is no particular magic in isolated phrases." The rule is well expressed in the case of *Cassidy, Guardian, et al.* v. *Murray, Trustee, et al.,* 144 Me. 326, at page 328, where the court said:

> "It is the intention of the testator which must prevail in the construction of a will. But that intention must be found from the language of the will read as a whole illumined in cases of doubt by the light of the circumstances surrounding its making."

Plaintiffs contend that the words "I want" were used by the testatrix in a precatory sense and it was not intended by her that they should be considered as mandatory. There have been some judicial determinations of the nature of the word "want" and its effect when used in a will. In the case of *Anders, et al.* v. *Anderson, et al.,* 97 S. E. (2nd) 415 (N. C.) a holographic will was concerned in which the testatrix intended to devise real property by the use of the words "I want." This case decided that the words as used in the will of Mrs. Hollingsworth were in a mandatory and not a precatory sense. See *Welch, et al.* v. *Rawls, et al.,* 186 S. W. (2nd) 103 (Texas); In re *Bearinger's Estate,* 9 A. (2nd) 342 (Penn.); *Sellers* v. *Myers,* 56 Penn. Supp. 207. When in a question of construction it is necessary to determine whether the words used by a testator are dispositive or precatory, a sound rule is found in Page on Wills, Vol. 1, Chap. 4, Sec. 91, which reads in part as follows:

"- - - - - The test is whether or not testator intends, by his language, to control the disposition of his property. If he does, the words in question are testamentary and the instrument is his will, no matter in how mild a form this intention is expressed. Such terms are often said to be mandatory. Or, on the other hand, is he simply indicating what he regards as a wise disposition, or is he merely giving advice, leaving to some other person, frequently the person to whom the property in question is given by some other provision of the instrument, full discretion to ignore such device and to make a different disposition of the property. If so, it is not a will. Terms of this sort are often said to be precatory."

The words used by the testatrix should be construed with liberality, having in mind that she being a layman would be using words having natural, ordinary and popular meaning. An interpretation of the words must be consistent with other words and provisions of the will, having in mind such admissible facts as existed at the time the will was written and with the ultimate purpose of carrying into effect the intentions of the testatrix. 95 C. J. S., Wills, Secs. 598, 599. See *Doherty* v. *Grady,* 105 Me. 36.

Plaintiffs question that Emma D. Jordan by her will created a valid and enforceable trust because they say there is indefiniteness as to her intention to do so. In their brief, counsel for plaintiffs agree that "most of the tests in favor of a valid trust are met in the case at bar." They say, however, that from the language used, her intention to create a trust is difficult of ascertainment. This court in many cases has set forth rules of guidance in construing wills where intentions of testators are in question as, for intance, in *Tapley* v. *Douglas,* 113 Me. 392, on page 394, the court said:

"In construing a will, it is proper to read it in the light of surrounding conditions, the relations between the testator and his intended bene-

ficiaries, the amount and nature of his estate, and other relevant circumstances which legitimately tend, in cases of doubt, to show the probabilities of his intentions, one way rather than another."

In *Bodfish* v. *Bodfish,* 105 Me. 166, at page 172:

"- - - - whether or not such a result will follow from the use of the language quoted, must depend upon the intention of the testator as disclosed by all of the provisions of the will examined in the light of such attending circumstances and manifest objects as may reasonably be supposed to have been in the contemplation of the testator at the time of making the will, such as the condition of his family, and the situation and amount of his property."

See *The New England Trust Company, et al.* v. *Sanger, et al.,* 151 Me. 295. A will should be construed so as to give effect to the intention of the testator and this intention is to be gathered from the language used in the will. It must be the intention of the testator at the time of the execution of the instrument. *Gorham Admr.* v. *Chadwick, et al.,* 135 Me. 479.

Emma D. Jordan wrote her own will. She had a son Henry who was mentally deficient and of this mental incapacity she was aware. At the time she wrote her will she owned a share in her father's farm which, according to the record, constituted the major portion of her estate. It is only natural that uppermost in her mind would be the thought of providing, in so far as she could, for her son Henry. She was unfamiliar, as most laymen are, with the terminology and phraseology a trained scrivener would use in the drafting of a will but a reading of her will shows the use of words that give expression to her intent to provide for her child, Henry. She wrote, "I *want* the money from my share in father's farm deposited in the Maine Savings Bank for Henry, - - -." In light of all the circumstances as shown by the record, the only reasonable inter-

pretation of the words "I want" as used in the will compels the conclusion that the testatrix intended her share in the farm be used for the benefit of Henry. To place an interpretation on the expression, "I want" as being words merely precatory or advisory in their nature would be to defeat intent when consideration is given to the will as a whole. Turning to the remaining portion of her will, she *gives* her bank book in the Casco Bank "to Everett to pay my funeral expenses." She disposes of some pieces of her furniture by *letting* Norman have what he wants and she *lets* Philip have his furniture and what other furniture he wants. Mrs. Jordan at the time she drafted her will was approximately 80 years of age. She, no doubt, used those words to express her intention which were familiar to her. They are not such words as would be employed by a trained legal mind in drafting a will but those which had meaning to her—words she was accustomed to use in her daily life. Within the four corners of her will she has expressed an intent, first to care for the boy Henry, and after that she wanted to be sure that her funeral expenses were paid so she directed Everett to take the money in the Casco Bank and pay them. She indicated concern that upon her death her body be taken to an undertaker at once. Finally someone was to *let* Norman and Philip have the furniture. These are the things which Emma D. Jordan intended should take place after her death.

In construing the will of Emma D. Jordan, we are led to the conclusion that she intended that a valid and enforceable testamentary trust be created for the benefit of her son, William H. Jordan (otherwise known as and called Henry Jordan) and that Gladys Jordan be trustee, with power to sell the real estate and deposit the proceeds to be used, as to corpus and interest, for the benefit of Henry. The phrase "it can be used to build a house for him on the lot I have reserved for him," we determine to be in the

nature of a suggestion to the testatrix' trustee that the proceeds from the sale of her share of the farm could be used to build a house for Henry on the lot she had reserved for him. This is merely an expression of desire which may or may not reach fulfillment and, by nature, is precatory and not mandatory. We further conclude that it was the intention of the testatrix to intentionally and designedly omit as beneficiaries in her will her three sons, Pomeroy D. Jordan, Lawrence L. Jordan and Stewart C. Jordan.

*Decree to be made by the sitting Justice in accordance with the opinion.*

*The costs and expense of each of the parties, including reasonable counsel fees, to be fixed by the sitting Justice after hearing and paid by the Administratrix, c.t.a. of Estate of Emma D. Jordan, and charged to her probate account.*