**Velma S. PALMER, Plaintiff,**
v.
**LINCOLN AUDUBON SOCIETY,**
**Defendant.**
Civ. No. 8–115.
United States District Court
D. Maine, S. D.
March 15, 1966.

Leonard Nelson, Portland, Me., Daniel O. Mahoney, Boston, Mass., for plaintiff.

Franklin G. Hinckley, Charles P. Barnes, II, Portland, Me., for defendant.

GIGNOUX, District Judge.

This is an action under 14 M.R.S.A. § 6501 et seq. for the partition of two parcels of real estate located on Muscongus Bay in the Town of Bremen, Maine. Jurisdiction is conferred by 28 U.S.C. § 1332. Plaintiff claims, as tenant in common with defendant, a one-third interest in one parcel and a two-thirds interest in the second parcel. Defendant claims the entire interest in both parcels. Defendant's claim of sole ownership is derived from a deed dated September 6, 1947, to National Audubon Society [1] from Myra J. Nash, who was the sole devisee under the will of her deceased husband, Charles K. Nash. Plaintiff's claim of title is based upon a deed dated November 17, 1964 to plaintiff from Amy Nash Holt, who was the sole surviving child of Charles K. Nash and was not mentioned in his will. The dispositive question is whether, as plaintiff contends, Amy Nash Holt acquired a two-thirds interest in her father's real estate by virtue of the Maine Pretermitted Child Statute, 18 M.R.S.A. § 1005 (formerly Me.Rev.Stat. ch. 155 § 9 (1944).[2] This statute provides in pertinent part:

"A child, or the issue of a deceased child not having any devise in the will,

1. National Audubon Society subsequently conveyed all its Maine real estate to defendant by deed dated March 20, 1963.

2. In view of the Court's disposition of the pretermission issue, the Court does not reach the further question of whether a

takes the share of the testator's estate, which he would have taken if no will had been made, unless it appears that such omission was intentional, or was not occasioned by mistake, or that such child or issue had a due proportion of the estate during the life of the testator."

The essential facts are not in dispute. Charles K. Nash died testate on February 9, 1946. He was survived by his widow, Myra J. Nash, who was then 86 years old, and a daughter, Amy Nash Holt, who was 58 years of age. At the time of his death, Mr. Nash owned, as tenant in common with his wife, a one-half interest in the Nash farm, so called, at Bremen, Maine, and he owned the entire interest in a separate parcel, known as the "Dewyea" lot. His will, which was executed on March 6, 1941, left all his property real and personal to his widow, who was named executrix, and made no mention of his daughter.[3] The will was duly allowed for probate by the Lincoln County Probate Court on September 2, 1947.

Mr. and Mrs. Nash had lived together on the family farm for many years prior to his death in 1946. Mr. Nash was a farmer, and neither he nor Mrs. Nash owned any other property, or had any source of income other than the farm and such odd jobs as Mr. Nash might obtain in the area. They had three children:

Harold, Beatrice and Amy. Harold never married, and died in 1932. Beatrice, an invalid and unmarried, lived with her parents on the farm until her death on February 6, 1941. Amy and her husband, Harry W. Holt, whom she had married in 1920, had no children. She and her husband had lived since their marriage in Berlin, New Hampshire, where he was employed by the Brown Company. Amy had taught school in Maine and New Hampshire previous to her marriage, and was an experienced school teacher. She was 53 years old at the time Mr. Nash executed his will on March 6, 1941, just four weeks after the death of Beatrice.

The parties are in substantial agreement as to the principles governing pretermission under the Maine Pretermitted Child Statute, as they have been declared by the Maine court. The sole question is whether the omission to provide for a child in a will was intentional, and not occasioned by mistake. Walton v. Roberts, 141 Me. 112, 114, 39 A.2d 655 (1944); Ingraham, Appellant, 118 Me. 67, 69, 105 A. 812 (1919).[4] The statute raises a presumption that the omission was not intentional. Jordan v. Jordan, 155 Me. 5, 9, 150 A.2d 763, 765 (1959); Walton v. Roberts, supra, 141 Me. at 115, 39 A.2d at 656. This presumption, however, is rebuttable, Jordan v. Jordan, supra; Walton v. Roberts, supra; In-

---

deed dated September 5, 1947, and recorded in the Lincoln County, Maine, Registry of Deeds on June 29, 1959, which purports to convey to Myra J. Nash any interest of Amy Nash Holt in her father's real estate, was in fact executed by her and her husband, or was fraudulent and void.

3. The will reads as follows:
"Be it rembered that I Charles K. Nash of Bremen in the County of Lincoln, in the State of Maine, being of sound and disposing mind and memory, but mindful of the uncertainty of this life, do make, publish and declare this my last will and testament, hereby revoking all former wills by me made.
"After the payment of my just debts, funeral charges and expenses of administration, I dispose of my estate as follows:

"First, I give, devise and bequeath, all the rest, residue and remainder of my estate real, personal and mixed, wherever found and however situated to my beloved wife Myra Nash, and I hereby appoint my said wife Myra Nash sole executor of this my last will and testament.
"And I request that the said Myra Nash shall not be required to give bond.
"In testimony whereof, I hereunto set my hand and declare this to be my last will and testament, this sixth day of March, in the year of our Loard (sic) one thousand nine hundred and forty-one."
/s/ Charles K. Nash

4. There is no suggestion in this case that Amy "had a due proportion of the estate" during the life of her father.

graham, Appellant, supra, and the burden of rebutting it is on those who oppose the claim of the child. Walton v. Roberts, supra. Declarations of a testator are admissible on this point, id.; Whittemore v. Russell, 80 Me. 297, 299, 14 A. 197, 198 (1888), and all the relevant facts and circumstances of the testator's life at the time the will was drawn may also be shown. Walton v. Roberts, supra; Ingraham, Appellant, supra, 118 Me. at 70, 105 A. at 813. The circumstances of the testator's life at the time he executed his will may "speak even more conclusively than would direct evidence of (his) intent." Walton v. Roberts, supra. "With the wisdom or propriety of the testator's act the law has nothing to do. If adequate and convincing proof, extrinsical the will, shall show that when that instrument was made, the son being present to his mind, the parent purposely ignored him, and otherwise made bestowal of his bounty, then we must hold that the testator's will be done." Ingraham, Appellant, supra 118 Me. at 68, 105 A. at 812. "The clause, 'or was not occasioned by mistake,' is introduced in the statute to enforce or give emphasis to the meaning of the preceding word, 'intentional,' which is the ruling expression." Id. at 69, 105 A. at 813. The word "mistake" is not to be construed as meaning such mistake " 'as would or might have caused the testator to entertain a different intention from that which omission from the will would show, but mistake or accident in the will or in its transcription.' It must, in the context, refer to such mistake or mistakes as are likely accidentally to occur in the preparation of a will, as momentary rather than purposed forgetfulness, owing to the distress of the testator; or error, on the part of the scribe or otherwise, in reducing the testator's intention in that behalf to writing, and not to misapprehension or misunderstanding as to matters outside the will, whether of law or of fact." Id.

Applying these principles to the instant case, the Court is satisfied that the defendant has rebutted the statutory presumption, and has shown by adequate and convincing evidence that the omission by Charles K. Nash to provide in his will for his daughter, Amy Nash Holt, was intentional, and not occasioned by mistake.

The evidence establishes beyond doubt that Amy was present to her father's mind when he made his will on March 6, 1941. It discloses that there was a completely harmonious relationship between Amy and her parents from her childhood up to the time of her father's death in 1946. During her school years she spent her summers, holidays and vacations at the family farm, and her custom of extended and continuous visits with her parents continued into her later life, when first she taught school in Maine and New Hampshire, and thereafter when she and her husband were living in Berlin, New Hampshire. As she herself testified, "I was there (in Bremen) almost more than I was in Berlin * * * all holidays, in the spring to help with the work, and several weeks in the summer," and she "never failed" to go to her family home at Christmas vacation time, and while at Bremen, she would "clean house, did the mending and washing for them, took over." Mr. Carl W. Buchheister, the President of the National Audubon Society, who first came to know the Nashes in 1935 when he assumed his duties as director of the Audubon camp on nearby Hog Island, testified that he saw Amy at the farm "on the average of about twice a summer," and that the Nashes spoke of her "quite frequently" in conversations with him. More importantly, when her sister Beatrice died on February 6, 1941, Amy returned to Bremen for the funeral and stayed with her parents for approximately a month immediately prior to the date upon which Mr. Nash executed his will. It is inconceivable that in making his will Mr. Nash inadvertently overlooked his only living daughter, who was so devoted to her parents and who had been so frequently and so recently a visitor in their home. Cf. Walton v. Roberts, supra 141 Me. at 116, 39 A.2d at 656; Ingra-

ham, Appellant, supra 118 Me. at 68, 105 A. at 812.

The evidence also contains adequate and convincing proof that the omission of Amy from her father's will was most natural under all the circumstances. There was every reason why Mr. Nash should wish his wife to have, in case of his death, all his property, including the farm on which they had lived their entire life together, and why he should be primarily concerned that his wife be provided for to the full extent of his limited resources. He and his wife had lived happily on the farm for many years, and Mrs. Nash already owned a one-half interest in the property. When he executed his will, Mrs. Nash was 81 years old, with no income of her own. The farm constituted the major part of his estate, which was not substantial, and he undoubtedly realized that his estate in all probability would be insufficient for his wife's future needs in the event he predeceased her.[5] Amy, on the other hand, who was married and childless, was well provided for by her husband and had property of her own. Moreover, she was an experienced school teacher, who could provide means for herself and her family. Notwithstanding Mr. Nash's unquestioned love and affection for his daughter, he had sound and logical reasons for leaving all his property to his wife, who needed it most. In light of the relative circumstances of his wife and daughter and his natural concern for the care of his wife in the event of his death, his will provided a rational and appropriate disposition of his property.

The record also contains other and more direct evidence of Mr. Nash's actual intention with respect to his daughter. Mr. Buchheister testified that during the summers from 1936 to 1941 he had occasion to talk with the Nashes on the average of once or twice a week. He stated that in 1940 or 1941 Mrs. Nash initiated a discussion with him concerning the eventual disposition of their property, at which time she told him,

> "that she felt and her husband felt that since they were not getting any younger, they would like to make plans for the disposition of their property and that they both agreed that they would like to have the National Audubon Society have it."

Mr. Buchheister further testified that he specifically asked Mr. and Mrs. Nash "why did they not have Amy in mind to get the property since she was their daughter," and that Mrs. Nash replied,

> "that Amy had already property, that she lived in Berlin, New Hampshire where her husband was employed; that she and Mr. Nash felt that she was well provided for; that the National Audubon Society should receive the property."

Mr. Buchheister testified that similar conversations occurred in the following years with both Mr. and Mrs. Nash, and that at all times Mr. Nash was "fully in accord" with what his wife had said. These conversations lend strong support to the conclusion that Mr. Nash did not intend to leave any property to his daughter, feeling "that she was well provided for."

Plaintiff asserts that it appears from the face of the will that a clause is missing, in all likelihood a bequest to Amy, which suggests an "error, on the part of the scribe or otherwise, in reducing the testator's intention in that behalf to writing. * * *" Ingraham, Appellant, supra 118 Me. at 69, 105 A. 813. Her point is that the bequest to Mrs. Nash is in the form of a residuary bequest, without any preceding bequest to any other person.[6] It appears, however, that the will was prepared by a local justice of the peace, who was, in Mrs. Holt's words, "no lawyer at all." Certainly, the will was awkwardly drawn, but the record discloses no circumstance which would indicate that it did not accurately reflect

---

5. Mr. Nash's estate was appraised at $5,-491.20.

6. See note 3, supra.

Mr. Nash's testamentary intention at the time.

Upon all the evidence, the Court concludes that the omission by Charles K. Nash to provide in his will for his daughter, Amy Nash Holt, was intentional, and not occasioned by mistake. Accordingly, Mr. Nash's entire estate passed under his will to his widow, and his daughter took no interest therein which she could convey to plaintiff.

Judgment will be entered for defendant, with costs.