**ESTATE OF Charlotte J. SWEET.**

Supreme Judicial Court of Maine.

Argued Nov. 19, 1986.
Decided Jan. 6, 1987.

Linscott, Badger & Slater, Michael L. Rair (orally), Bangor, for plaintiff.

Ferris, Dearborn & Willey, P.A., Joel A. Dearborn (orally), Brewer, for defendant.

Before NICHOLS, ROBERTS, WATHEN, GLASSMAN, SCOLNIK and CLIFFORD, JJ.

CLIFFORD, Justice.

Walter Sweet, the principal beneficiary of the will of his mother, Charlotte J. Sweet, appeals from a judgment of the Hancock County Probate Court finding that Mrs. Sweet intended to give her personal representative authority and discretion to pay a portion of Walter's share to some or all of Walter's creditors and any balance to the trustee of a pour-over trust that names Walter as the income beneficiary. Walter also contends the court erred in incorporating by reference a memorandum providing guidelines to the personal representative as to the manner in which Walter's distribution was to be made. Although we agree that the court improperly incorporated the memorandum, we affirm the judgment of the Probate Court.

Charlotte J. Sweet died on February 23, 1985, while domiciled at Bar Harbor. She was survived by two sons, Walter and Sherley Sweet. By her will she appointed Sherley her personal representative. Aside from numerous small bequests to various relatives, Walter was to take the bulk of the estate, except for the residuum, which he was to share with his brother Sherley.

Three provisions of the will lie at the center of this controversy.

[Article] *Third:* To my son WALTER R. SWEET, I give and devise all the real estate, land and buildings, [comprised in three parcels specifically described].

[Article] *Fifth:* All the rest, residue and remainder of my estate, real, personal or mixed, wheresoever the same may be situated and whether acquired now or in the future, of which I may die seized or possessed, or over which I may ever have any power of appointment by Will, I give, devise and bequeath to my sons WALTER R. SWEET and SHERLEY M. SWEET, Jr. to be divided equally between them.

[Article] *Eighth:* (a) I hereby nominate, constitute and appoint my son SHERLEY M. SWEET, JR., Personal Representative of this my Last Will and Testament....

(b) I further direct that any and all devises, bequests and gifts to my son Walter R. Sweet which are provided for by the provisions of this my Last Will and Testament, including both real and personal property shall be paid and/or delivered over by my Personal Representative to the said Walter R. Sweet directly, or to the creditors of the said Walter R. Sweet, or to the Trustee of a certain Trust Agreement between me and The First National Bank of Bar Harbor, dated June 18, 1982, to be administered and disposed of pursuant to the provisions of said Trust Agreement.

(c) I further direct that this distribution shall be made by my Personal Representative in his or her sole discretion as to amounts or property to be distributed, and in making distribution of interest

in real estate, the duly executed deed of conveyance by said Personal Representative shall be deemed to be evidence of the distribution authorized by this provision of my Last Will and Testament.

(d) I further direct that in making any distribution to the creditors of the said Walter R. Sweet that my Personal Representative shall give due consideration to any memorandum or memoranda of said indebtedness which shall have been prepared by me and is in existence at the time of my death.

(e) I further direct that this provision of my Last Will and Testament with respect to distribution to Walter R. Sweet shall be applicable notwithstanding that he may have predeceased me.

Offered for probate along with the will on March 5, 1985, were a trust agreement dated June 18, 1982, and a typewritten attachment disposing of various items of personal property. Not initially offered for probate through oversight was a three page typewritten memorandum entitled "Memorandum to be Attached to my Last Will and Testament" (memorandum) containing precatory language addressed to the personal representative and setting forth guidelines for the disposition of the property included in Walter's share and detailed instructions regarding payment of Walter's debts.

The documents initially offered were informally allowed on March 6, 1985, but on July 11, 1985, Walter moved pursuant to 18–A M.R.S.A. § 3–607 (1981) for an order restraining Sherley from making any distribution under the will on the grounds of interest and bias.[1] In conjunction with this motion, Walter filed a petition for construction of the will.

In his petition for construction, Walter sought a construction which preserved as outright and unconditional gifts the provisions made in Articles Third and Fifth and nullified the discretionary control provided the personal representative in Article Eighth. Walter further argued that the reference in paragraph Eighth (d), to "memorandum or memoranda" was insufficient to incorporate by reference under 18–A M.R.S.A. § 2–510 (1981), and that the provision in paragraph Eighth (b) for a pour-over trust violated 18–A M.R.S.A. § 2–511 (1981).

A hearing was held on January 14, 1986, in which Mrs. Sweet's attorney, who had drafted the will, and Sherley testified. The attorney, who had begun working with Mrs. Sweet on her estate plan in the mid-seventies, testified to the circumstances surrounding its execution.

The attorney testified that he had in early December, 1981, sent a draft of a will to Mrs. Sweet, then wintering in Florida, and in early January, 1982, sent a final draft for her to execute. After Mrs. Sweet returned to Maine in late spring, 1982, she came to the attorney's office for three conferences on May 25, 1982, June 14, 1982, and June 18, 1982. During the first two conferences she revised the will the attorney had previously sent to her.

At the final conference on June 18, 1982, attended by the attorney, Sherley, and Mrs. Sweet, the attorney reviewed line by line the will in its final form, explaining its provisions. The attorney testified that he explained to Mrs. Sweet that Articles Third, Fifth and Eighth together provided for distribution to Walter. Articles Third and Fifth defined his share and Article Eighth designated how the share would be distributed to him either directly or beneficially by the terms of a trust or by payment to his creditors. The attorney further testified that he told Mrs. Sweet that the memorandum referred to in Article Eighth had to be in existence at time of execution in order to be incorporated by reference.

The attorney further testified that when he explained that the memorandum referred to in Article Eighth (d) had to be in

---

1. In the court's decree of May 13, 1986, Sherley was formally appointed personal representative.

Walter has not challenged the appointment on appeal.

existence, Mrs. Sweet produced the memorandum and signed each page of the memorandum in his presence, and that he had in his capacity as justice of the peace taken her acknowledgement. Mrs. Sweet told the attorney that the memorandum of indebtedness was the one referred to in the will. The attorney further testified that when he had filed Mrs. Sweet's will and related documents for probate he had inadvertently failed to include the memorandum. The attorney also testified that he had prepared the pour-over trust as an integral part of Mrs. Sweet's estate plan, and that the trust was likewise executed contemporaneously with the will on June 18, 1982.[2]

Sherley testified that he had discussed with Mrs. Sweet her desires regarding the disposition of Walter's share of the estate. He testified that Mrs. Sweet thought that Walter was fiscally irresponsible and that she was concerned he would squander his inheritance. At Mrs. Sweet's request, he had made in 1981 an inquiry into Walter's financial condition. At Mrs. Sweet's direction he prepared and typed the memorandum propounded for incorporation. He further testified that at the conclusion of the conference during which all the writings were executed on June 18, 1982, Mrs. Sweet took all the documents, including the memorandum, put them in a brown manila envelope and placed them in her safety deposit box.

In its decree entered on May 13, 1986, the Probate Court held that Article Eighth (d) sufficiently described the memorandum to permit its incorporation by reference under 18–A M.R.S.A. § 2–510. The court further held that, when viewed in light of the intent manifested by the will as a whole, the outright devises and bequests in Articles Third and Fifth could be reconciled with the discretionary powers vested in Sherley as personal representative in Article Eighth. Accordingly, the court held that Sherley could in his sole discretion elect to pay a portion of Walter's share to some or all of Walter's creditors and any

balance to the trustee of the pour-over trust rather than Walter directly. Walter appealed the Probate Court's judgment to this court.

## I.

Walter contends that the descriptive language in Article Eighth is as a matter of law insufficient to permit identification of the memorandum. We agree.

■■■■ The doctrine of incorporation by reference is controlled by 18–A M.R.S.A. § 2–510, part of the Uniform Probate Code incorporated into Maine statutes. It reads:

> Any writing in existence when a will is executed may be incorporated by reference if the language of the will manifests this intent and describes the writing sufficiently to permit its identification.

Enactment of section 2–510 did not effect a change from the previous common law rules for incorporation by reference. *See* 18–A M.R.S.A. § 2–510 comment. Aside from manifesting an intent to incorporate an existing writing, the reference in the will must clearly and precisely describe the extrinsic writing as to permit its identification without the aid of parol evidence. *Fitzsimmons v. Harmon*, 108 Me. 456, 458–59, 81 A. 667, 668 (1910); *Appeal of Bryan*, 77 Conn. 240, 246, 58 A. 748, 751 (1904). The reference in the will must describe the extrinsic writing with such particularity as to leave no doubt in the court's mind that the writing referred to is the very document offered for probate.

■■■■ The description in this case falls short of the requisite particularity. Article Eighth (d) refers

> to any memorandum or memoranda of said indebtedness which shall have been prepared by me and is in existence at the time of my death.

From this description alone, and without the aid of extrinsic evidence, the court could not possibly have determined how many extrinsic writings the testatrix in-

---

**2.** Walter does not contend on appeal that the    trust was improperly incorporated.

tended to incorporate. Nor could the court have determined from the use of the future perfect tense in the clause modifying "memorandum or memoranda" whether the writing was in existence at the time of execution. Moreover, in this context the reference to what is "in existence at the time of my death" further suggests that the extrinsic writing was not in existence at the time the will was executed. The reference in the will must describe the extrinsic writing as an existing document. *Appeal of Sleeper,* 129 Me. 194, 199, 151 A. 150, 153 (1930); *Fitzsimmons,* 108 Me. at 458–59, 81 A. at 668.

■ The court improperly relied on the testimony of Mrs. Sweet's attorney to supplement the insufficient description in the reference in the will. Under section 2–510, the court should have confined its initial inquiry to the description appearing in the reference. After that, extrinsic evidence is admissible only to show that the writing was in fact in existence when the will was executed. *See Guilford Trust Company v. Milo Community Hospital,* 227 A.2d 612, 614 (Me.1967); *Sleeper,* 129 Me. at 199, 151 A. at 153. Although much of the evidence objected to at the hearing was admissible to prove contemporaneous existence of the memorandum, the court's reliance on the attorney's testimony to supplement the description in the reference was error. We hold as a matter of law that the reference did not describe the memorandum sufficiently to permit its identification.

## II.

■ Even though the court erred in ruling that the memorandum was properly incorporated, the court correctly construed the will itself. In drawing this conclusion we have observed the fundamental principle that "[t]he intention of a testator as expressed in his will controls the legal effect of his dispositions." 18–A M.R.S.A.

§ 2–603 (1981). *See Philoon v. Varney,* 514 A.2d 1203, 1205 (Me.1986); *In re Estate of Thompson,* 414 A.2d 881, 887 (Me. 1980). The intention of the testator, collected from the language of the whole instrument interpreted in light of the manifest object of the testator, guides construction of the will. *Bodfish v. Bodfish,* 105 Me. 166, 170–71, 73 A. 1033, 1035 (1909). All parts of the will are construed in relation to each other and apparently repugnant portions of a will must be reconciled if possible by considering the will in its entirety and as an expression of consistent intents. *Whicher v. Abbott,* 449 A.2d 353, 355 (Me.1982); *Thaxter v. Fry,* 222 A.2d 686, 690 (Me.1966).

■ The court correctly determined that Mrs. Sweet's intention was to give the personal representative authority and discretion to pay Walter's creditors and the trustee of the pour-over trust part or all of Walter's share of the estate. To put this intention into effect Mrs. Sweet first defined in Articles Third and Fifth the sources of Walter's share to make of it a fund or fisc. Then in Article Eighth Mrs. Sweet specified three ways in which the personal representative could distribute Walter's share. Taken in its entirety, it is clear that the testatrix intended to benefit Walter either directly or indirectly while at the same time withholding from him direct control of the assets.[3]

■ The court in effect construed the will to create an implied special power of appointment. The potential takers under the will are Walter, the trust, or Walter's creditors, a specific class of individuals, among whom the personal representative may pay some or all. Certainly an implied special power of appointment is an appropriate legal designation for the discretionary power vested in the personal representative by Article Eighth. Since neither Mrs. Sweet's intent nor the scheme by which she put it into effect violates a settled rule of

---

**3.** We note the absence of boilerplate language designating Walter's "heirs and assigns" or other language suggesting "own and exclusive use for-

ever" and the like often associated with devises of absolute fees.

law or principle of sound public policy, we uphold the court's construction. *See Bodfish*, 105 Me. at 170–71, 73 A. at 1035.

■ Walter relies on numerous rules of construction that attempt to isolate the specific provisions affecting distribution of his share of the estate and to assign controlling value depending on the relative position of each provision in the will itself. Although such canons of construction have their place when it is impossible to determine the testator's intent, it is settled law that when, as here, the testator's intent is readily apparent from the will when construed in its entirety, canons of construction must yield to that intent. *See Thaxter*, 222 A.2d at 690.

■ We consider it unnecessary to treat in detail Walter's contentions of erroneous evidentiary rulings by the court aside from those pertaining to incorporation by reference already discussed. The court expressly stated that it ignored all testimony regarding Mrs. Sweet's declarations of intent. *See* M.R. Evid. 803(3); Field & Murray, *Maine Evidence* § 803.3 at 213–14 (1976). Moreover, inadmissible evidence received by the court, sitting without a jury, does not require reversal unless it appears that the court's decision was based in whole or in part on such evidence. *In re Knapp's Estate*, 149 Me. 130, 141, 99 A.2d 331, 338 (1953); *Haskell v. Hervey*, 74 Me. 192, 197 (1882). It does not appear from portions of the record and order relevant to Walter's contentions that the court did so rely.

The entry is:

Judgment affirmed.

All concurring.